**Andrew ZARCO, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–04–01125–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 21, 2006.

John L. Denninger, Houston, for Appellant.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

In this appeal from a jury's guilty verdict of indecency with a child, we are asked to find egregious harm from the trial court's failure to give a reasonable doubt instruction at the punishment phase of trial. We also are asked to decide if the State timely identified its outcry witness when the proper notice was given only thirteen days before the jury was sworn but fourteen days before evidence was first received.

We conclude that appellant was not egregiously harmed by the lack of a reasonable doubt instruction because the weight of the evidence weighed heavily in A.C.'s favor, appellant's defense was weak and never directly attacked A.C.'s claims, a correct instruction was given at the guilt phase, and the State's closing argument in the punishment phase only briefly men-

tioned the evidence from the trial phase. We also conclude that the State gave untimely notice of its outcry witness, but the notice—one day shy of proper notice—did not harm appellant. We therefore affirm the jury's finding of guilty to one incident of exposure to A.C., a child younger than twelve.

## Factual and Procedural Background

A.C.,[1] the complainant, lived with her father and his girlfriend, appellant's mother.[2] A.C.'s house had three bedrooms: A.C.'s bedroom, the father's bedroom, and a third bedroom where appellant and his two brothers would sleep when there.[3] The three brothers rotated staying at the complainant's house.

A.C. testified at trial that appellant sexually abused her between the time she was in kindergarten and third grade. She testified not only to the charged act but to other similar bad acts appellant committed. A.C. was ten years old and in fourth grade when she testified. Her testimony regarding the charged offense and the extraneous offenses was clear, direct, and unimpeached, and each of the offenses— charged and uncharged—was described with the same degree of specificity, as illustrated in more detail below.

A.C. did not speak of the abuse to an adult or an older relative until she was in the third grade, during the 2003 Thanksgiving holidays, when she received some startling news. She was spending the holidays with her grandmother, who learned that A.C.'s father was to be deported to Mexico. The grandmother told A.C., who was distressed by the news. A.C. told an older cousin, Ashley, that she did not want to return to her father's house if he was not there. She told Ashley that appellant would get into her bed, and that she was afraid to return to the house.

This reference to inappropriate behavior received a swift reaction from her grandmother and other relatives, who scheduled appointments with a female detective and with the Children's Assessment Center in Houston. The information obtained in these meetings prompted the State to file charges against appellant. He was indicted for one incident of exposing his genitals to A.C., a child younger than twelve, on or before November 22, 2003.

At trial, A.C. testified to all of the incidents of abuse by telling the jury generally what would happen. The prosecutor also had her testify separately about the charged event, which occurred a month or so before Thanksgiving of 2003, and about another time when she ran to the door of her father's bedroom. At the close of the guilt/innocence phase, the jury received a reasonable doubt instruction for the extraneous offenses. It found appellant guilty as charged.

During the punishment phase, appellant presented two witnesses; the State presented no evidence. The charge instructed the jury that the punishment was from two to ten years, which could be probated if the jury desired, and the charge instructed the jury that it could recommend community supervision—i.e., probation. The charge also reminded the jury of the State's burden of proof, but it did not inform the jury that it could consider the extraneous offenses only if it found beyond

---

**1.** Because the complainant is younger than seventeen, we use only her initials.

**2.** The complainant lived with her father because her mother died sometime before the complainant entered kindergarten.

**3.** Evidence at trial showed that Appellant would sometimes sleep in A.C.'s bed.

a reasonable doubt that appellant committed them. Appellant did not object to the charge's failure to include this instruction. At the close of the evidence the jury found appellant guilty and assessed a three-year sentence without probation and no fine.

Appellant filed this appeal alleging that (1) the trial court reversibly erred in not instructing the jury during the punishment phase that it could not consider any extraneous bad acts without first finding them true beyond a reasonable doubt; and (2) the State did not timely identify its outcry witness.

## Analysis

### I. Jury Charge Error

In his first issue, appellant contends the trial court committed error—during the punishment phase of the trial—when it failed to, *sua sponte*, give the jury a reasonable doubt instruction on extraneous offenses.[4] As we explain below, we agree; however, we do not find that the error was harmful.

### A. The Trial Court Erred

■ At the punishment phase, the State may introduce evidence of "an extraneous crime or bad act that is shown beyond a reasonable doubt." TEX.CODE CRIM. PROC. art. 37.07, § 3(a)(1). This standard of proof is law applicable to the case. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim.App.2000). A defendant is entitled to have the jury receive a reasonable doubt instruction regarding extraneous offenses without request. *Id.* It is error if

the trial court fails to instruct the jury *sua sponte*. *See id.* A defendant need not object at trial to preserve error. *Id.* However, the failure to object increases appellant's burden on appeal, imposing a higher hurdle appellant must overcome—namely egregious harm—before we can reverse. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

Here, the State referred to the evidence adduced at the guilt/innocence phase, which included both the indicted offense and the extraneous offenses. The State contends all of these instances comprised one transaction or occurrence and so did not require a reasonable doubt instruction. Appellant argues they are extraneous bad acts requiring an instruction that the jury could not consider them in assessing punishment unless it was convinced beyond a reasonable doubt the events did occur and were attributable to appellant. We agree with appellant that the indicted offense and the extraneous offenses were separate occurrences.

#### 1. Not same-transaction contextual evidence.

■ The State's primary claim is that the multiple instances of alleged abuse comprise one larger criminal act. "Circumstances of the offense ... tend[ing] to prove the allegations of the indictment are not extraneous offenses." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim.App. 1993) (citing *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex.Crim.App.1991)). However, an extraneous offense is "any act of misconduct, whether resulting in prosecution

4. For example:

The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, in determining the proper punishment for the offense for which you have found the defendant guilty. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any were committed.

1 JUDGE ELIZABETH BERRY ET AL., TEXAS CRIMINAL JURY CHARGES, § 3:440 (Heidi Lowry, ed., James Publ'g Dec. 2005).

or not, that is not shown in the charging papers." *Rankin v. State,* 953 S.W.2d 740, 741 (Tex.Crim.App.1996) (citing cases). The Court of Criminal Appeals recently reaffirmed that multiple instances of abuse occurring over several years are separate offenses. *See Phillips v. State,* 193 S.W.3d 904, 910–11 (Tex.Crim.App.2006). Same-transaction contextual evidence, on the other hand, is extraneous offense evidence that is indivisibly connected to the charged offense. *Hatton v. State,* No. 14–98–00542–CR, 2000 WL 350539, at *1 (Tex. App.-Houston [14th Dist.] April 6, 2000, no pet.) (not designated for publication). If the State offers same-transaction contextual evidence for a purpose other than showing the defendant's character, then a reasonable doubt instruction is not required. *See Searcy v. State,* No. 14–03–00402–CR, 2004 WL 1315448, at *4 (Tex.App.-Houston [14th Dist.] June 15, 2004, no pet.) (not designated for publication) (citing cases). Otherwise, as we have explained, the instruction is mandatory.

■ Here, the State presented evidence of multiple instances of abuse. The alleged abuse occurred over a period of years and involved, on occasion, the appellant removing his clothes, removing complainant's clothes, and moving his genitals both over and under her clothing. The State fails to explain how these other instances show the surrounding circumstances of the indicted offense, which was one count of indecency with a child by exposure of genitals that occurred on or about November 22, 2003. While the State may prove a crime that occurs anterior to the "on or about" date

listed in the indictment to obtain a guilty verdict, for purposes of suggesting punishment, it must rely on the crime contained in the indictment.[5]

### 2. The State referred to the evidence in the punishment phase.

Alternatively, the State argues no instruction was necessary even if the other alleged offenses were extraneous offenses and were not same-transaction contextual evidence. The State's position is that it did not specifically use or refer to that evidence at punishment, and it also told the jury there were no extraneous offenses to consider.

It is true that the State introduced no new evidence during the punishment phase. Also, it did not request any specific punishment for appellant. The assistant district attorney spent the majority of his closing argument discussing the jury charge, explaining that the State would respect any punishment assessed, and made little reference to the evidence before the jury. But he did tell the jury it could consider what appellant had done to A.C. and how often the abuse happened.

■ The State contends an extraneous offense instruction was unnecessary because the State informed the jury there were no prior convictions or felony cases to consider. This argument is correct insofar as it states that no extraneous offense instruction is needed for a prior adjudicated offense, because another jury has already found beyond a reasonable doubt that the crime was committed. But,

---

5. *Yzaguirre v. State,* 957 S.W.2d 38, 39 (Tex. Crim.App.1997) (holding that when the indictment uses "on or about" language the State may rely on an offense with a date other than the one listed in the indictment, so long as the offense occurred anterior to the presentment of the indictment, within the statutory period of limitation, and the offense relied upon oth-

erwise meets the description of the offense contained in the indictment); *but see Graves v. State,* 176 S.W.3d 422, 434 (Tex.App.-Houston [1st Dist.] 2004, pet. stricken) (explaining that separate instances of fondling are different offenses under the penal code, not merely multiple occasions of the same offense).

the argument is incorrect because it assumes that unadjudicated offenses do not require a reasonable doubt instruction. *See Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim.App.2004) (stating that while prior convictions need not be re-proven beyond a reasonable doubt, the plain language of the statute requires proof beyond a reasonable doubt for extraneous bad acts). That argument is contrary to article 37.07, section 3(a)(1), and the case law interpreting it. *See* TEX.CODE CRIM. PROC. art. 37.07, § 3(a)(1).[6]

■ The purpose of the instruction is to prevent the jury, when it is determining punishment, from considering any extraneous offense unless it first has decided beyond a reasonable doubt that the defendant has committed the offense. *See id.* Under the relevant article, article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure, an extraneous offense includes crimes other than the charged crime and other bad acts. *See id.*

In the trial below, the non-charged offenses presented by the State constitute "extraneous offenses" requiring the article 37.07 instruction. In fact, the presence of extraneous offenses required an article 37.07 instruction regardless of whether or not the State referred to them in closing. In short, the trial court erred.

### B. Egregious Harm

Deciding if error occurred, however, is only part of our inquiry. Once we find error, we must determine if the error harmed appellant. Because appellant's counsel did not object at trial to the instruction's omission, we will not reverse unless the error amounted to egregious harm. *See Almanza*, 686 S.W.2d at 171 (Tex.Crim.App.1984); *see also Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991) (holding that omission of an unrequested jury instruction "applicable to the case" requires reversal only when the harm was egregious).

■ Egregious harm exists when the defendant's rights are injured to the point that he was denied a fair and impartial trial, when the error (1) went to the very basis of the case, (2) denied the defendant a valuable right, or (3) vitally affected his defensive theory. *Almanza*, 686 S.W.2d at 172. In *Almanza*, the court held that the degree of harm must be assayed "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* at 171. Regarding how a reviewing court should conduct a review for egregious harm, the *Almanza* court referred to an 1890 opinion by the Texas Court of Appeals, saying that it could not improve on that court's explanation. *Id.* at 173.

But in determining whether the error is material ... we are to look to the whole record bearing upon the subject. What

---

6. Article 37.07, section 3(a)(1) states in part: Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible*, regardless of whether he has previously been charged with or finally convicted of the crime or act. TEX.CODE CRIM. PROC. art. 37.07, § 3(a)(1) (emphasis added).

was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the charge, and upon which omission error is assigned? Was it at all reasonable? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case, as well as the charge as a whole? Was the phase of the case simply an addition to the case as made by the State and consistent therewith, or was it in direct conflict with the State's theory? These are all important matters to be considered in passing upon the [degree of harm] in the omission or error.

*Id.* at 173–74 (citing *Davis v. State*, 28 Tex.App. 542, 13 S.W. 994, 995 (1890)). Egregious harm is the highest standard of harm an appellant must meet in part because it involves error raised for the first time on appeal. *Almanza*, 686 S.W.2d at 172–74. We must determine the impact of the error on a case-by-base basis. *See Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim.App.1996).

**C. Application of Egregious Harm Standard**

■ Although *Davis* involved the trial court's failure to instruct the jury on a lesser included offense—a different inquiry than ours—it is nonetheless instructive. In light of the directions given by *Almanza, Davis*, and the other opinions we have mentioned, we will review generally the state of the evidence at both guilt/innocence and punishment phases of trial, closing argument at both phases and the de-

gree to which the error may or may not have been emphasized at the punishment phase, the charges at both phases of trial, and the punishment assessed. *See Davis*, 13 S.W. at 995; *Almanza*, 686 S.W.2d at 173–74; *see also Hutch*, 922 S.W.2d at 171. We turn now to that analysis.

*1. Examining the record.*

*a. The trial testimony at guilt/innocence strongly supported A/C's claims.*

The State presented seven witnesses,[7] including A.C., who had some knowledge of the abuse and were able to tell the jury their impressions.

*i) A.C.'s testimony about the event was clear, strong, direct, and unimpeached.*

A.C. was ten and in the fourth grade at trial. She testified about the charged offense—the pre-Thanksgiving event—as well as the extraneous offenses. Her testimony regarding each was remarkably similar. In each case she said appellant would enter her room while she slept and wake her as he was getting into her bed. In one instance he was naked when he got under her covers, spurring her to run to the door of her father's bedroom. In another, the last time the abuse occurred, he kept on his boxer shorts when he got into the bed, but when he put his hands down her pants and refused to stop, she got out of bed and lay on the floor. In what she described as the typical offense, he would unsuccessfully try to put his "private part" into her "private part."

A.C. told the jury appellant had abused her "a lot" of times between kindergarten and the third grade.

A.C.'s testimony in support of the charged offense and the extraneous of-

---

**7.** The eighth witness was the doctor who examined A.C. for any signs of abuse. He mere-

ly testified that he found no abuse, which was consistent with A.C.'s claims.

fenses was equally strong, equally direct, and equally consistent and almost identical up to the point of describing the specific event. Her testimony regarding these events stood unimpeached.

### ii) *The adult testimony in support of A.C. was clear, strong, direct, and unimpeached.*

To complete the story of how the abuse came to light and resulted in the indictment, the State presented the testimony of the following individuals: (1) three relatives who testified about A.C.'s initial revelation—during the Thanksgiving holidays—that appellant had abused her; (2) the outcry witness, a female police officer with the Jacinto Police Department, experienced in interviewing abused children; and (3) an expert from the Children's Assessment Center, who interviewed A.C. about the allegations.

These witnesses each presented clear, direct and unimpeached testimony regarding A.C.'s revelations to them. They presented a picture of A.C.'s actions toward them that was perfectly consistent with all of A.C.'s claims. The timing of A.C.'s revelation was consistent with her claims. The way in which she acted—emotional and afraid—was consistent with her claims. The level of detail and consistency of her answers to their questions was consistent with her claims.

In addition, one of the State's witnesses, Detective Silva, who was also the outcry witness, presented a negative view of appellant, who made incriminating and suspect statements when confronted with the allegations against him. Detective Silva said appellant was cocky and very defensive during his interview. His first comment to her, after she had told him of the accusations against him was "You're not going to pin this on me." They then discussed the circumstances at the house.

Appellant said A.C., who was between six and eight, would wear skimpy clothes and dance in front of him. He said "she tries to be sexy." He also said "He couldn't help it," but the record was a little unclear exactly what he meant by this comment. He also acknowledged that sometimes he would sleep in her bed. At the time of this interview, appellant was seventeen.

### iii) *The defense testimony did not directly relate to the allegations or specifically dispute them in any way.*

Appellant did not testify at trial. None of the defense witnesses had any knowledge whether the abuse did or did not occur, nor did they contradict A.C.'s allegations. Their purpose was to attack side issues. Specifically, they were meant to cast a doubt on some of Detective Silva's negative testimony regarding appellant's behavior upon learning of the allegations—none of which related to his incriminating statements made when Detective Silva interviewed him at the station—and to confirm that A.C. "tr[ied] to be sexy" at times.

### b. *Closing argument at guilt/innocence was uneventful and the charge properly limited the jury's consideration of the extraneous offenses.*

In its closing argument, the State did not urge a guilty finding by relying on histrionics or hyperbole. The transcription of the closing argument reflects a measured, reasonable argument based on the facts of the case. The charge properly instructed the jurors not to consider the extraneous offenses unless they were convinced beyond a reasonable doubt that they occurred.

### c. *At the punishment phase only the defense presented evidence, which was designed to encourage the jury to consider probation.*

At the punishment phase the State presented no testimony. The defense pre-

sented two witnesses: appellant's mother and a former employer/friend. Both said appellant was a nice young man and that, if he was given probation, they would help him successfully complete his term.

### d. The punishment phase arguments were uneventful.

As with the guilt/innocence phase closing arguments, the punishment phase arguments also were measured. The defense attorney primarily spoke to the jury about probation. He urged the jurors to give appellant probation and told them the judge would maintain close supervision to ensure that he honored the terms of probation.

The State first thanked the jurors for their verdict and for being willing to believe A.C., even though no one witnessed the abuse. The State told the jury it was responsible for deciding the best punishment for appellant, and that in making its decision the jury could look to the facts and consider how many times the abuse occurred and what was done. These comments, which took up seven lines out of the 107 lines of argument to the jury, came near the beginning of closing. The remainder of closing was spent on the charge, the possibility of probation, and explaining a potentially confusing part of the charge relating to probation.

### e. The charge failed to contain a reasonable doubt instruction.

Though the guilt/innocence phase charge contained an appropriate instruction limiting the jury's consideration of the extraneous offenses, the punishment phase charge did not. The jury was not told it could consider the extraneous offense evidence unless it found beyond a reasonable doubt that appellant committed the acts. Appellant did not object to the charge's failure to contain the instruction.

### 2. Analysis for Harm

After having reviewed the trial, we consider whether it caused appellant egregious harm. We are of the opinion that appellant was not egregiously harmed by the absence of the reasonable doubt instruction. Even without the instruction, appellant received a fair and impartial trial. We have already detailed the trial proceedings, but we highlight those parts of the proceedings that we rely on for our decision.

First, the character of A.C.'s testimony regarding the extraneous offenses was no different from the testimony the jury believed when it found appellant guilty. *See Davis*, 13 S.W. at 995 (exhorting the reviewing court to consider the character of the testimony to which the omitted charge language applied). All of the testimony was reasonable and it was of such a character that a reasonable mind could believe it beyond a reasonable doubt, not only if looking solely at A.C.'s testimony, but also if considering her testimony in conjunction with the supporting adult testimony. *See id.* (instructing the appellate reviewer to ask if the character of the testimony presented a theory which a reasonable mind could entertain). In addition, as we noted earlier, the circumstances under which A.C. first revealed the abuse—in reaction to startling news that she would have no protector at her home—are consistent with the way in which abused children often reveal their abuse. Detective Silva, who certainly appeared to believe A.C., described to the jury two types of abuse—the charged abuse and the most serious type of abuse—confirming that they occurred more than once from kindergarten to the third grade. And, the expert from the Children's Assessment Center detected no signs of fabrication. In short, A.C.'s testimony as to the extraneous offenses

was of the same character and strength as her testimony on the charged offense and both stood uncontradicted.

Second, the contested issues in the case were all side issues that did not directly impugn the veracity of A.C.'s allegations. These side issues dealt with (1) a diary in which A.C. had written a comment about having had sex, and whether she wrote it voluntarily or whether an older friend made her write it, (2) whether her father always kept his bedroom door open at night or only sometimes, (3) whether certain details—unrelated to the abuse—of Detective Silva's testimony were accurate, such as whether appellant did or did not immediately go to the police station to talk with Detective Silva. Each of the witnesses who testified regarding these side issues was either related to appellant or dating one of appellant's relatives. Even if the jury believed these witnesses, a reasonable juror still could have believed A.C.'s allegations beyond a reasonable doubt.

Third, although the State focused on the charged and extraneous offenses at the guilt/innocence phase, the jury was properly charged. Thus, if the jury considered these offenses in the guilt/innocence phase, it did so only after finding beyond a reasonable doubt that appellant committed them. At the punishment phase, the State did not introduce any testimony and otherwise did not emphasize the extraneous of-fense evidence, although it did mention it in closing.

Fourth, the punishment the jury assessed was at the low end of the punishment range. The jury could have chosen as little as two or as much as ten years, could have probated the punishment, and could have imposed a fine. Instead, it assessed a three-year punishment with no fine. Even if the jury had considered only the charged event, a three year sentence certainly was reasonable and not unfair, especially considering the complainant's tender age.

For all of these reasons, we conclude that appellant received a fair trial and that he was not egregiously harmed by the charge error. We overrule his first point of error.[8]

## II. Outcry Statute

In his second issue, appellant argues there was no showing that outcry testimony from Detective Silva was properly admitted under the statutory exception to hearsay.[9] TEX.CODE CRIM. PROC. art. 38.072. At trial, appellant specifically argued that Detective Silva was not the proper outcry witness. The State contends that any other arguments relating to the State's compliance with the outcry statute are waived. As we explain below, we disagree. Also, as we further explain, there is no harm in any event.

### A. Preservation of Error

---

8. We recognize this review has considered some matters of credibility, however, that is exactly what *Davis* instructs us to do. *Davis*, 13 S.W. at 995 (instructing the reviewing court to consider the nature of the testimony supporting the verdict, i.e., if it was cogent and overwhelming, and to consider whether a reasonable mind could believe the testimony related to the charge error).

9. Appellant also, without citing any authority, argues that Detective Silva testified to extra-neous offenses. This argument is waived both for inadequate briefing, and because he did not preserve this argument at trial. *See* TEX. R.APP. P. 38.1(h); *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App.1977). Additionally, he cannot show harm because, as we explain below, this evidence came in without objection later in the guilt/innocence phase of the trial through A.C. *See Massey v. State*, 933 S.W.2d 141, 149 (Tex.Crim.App.1996).

▮▮ At trial, appellant lodged the following objection to the State's outcry witness:

> [Defense]: Your Honor, I'm going to object at this time. This would be hearsay. And if not, in my opinion, I would also object to the report with the outcry exception as the outcry had been previously made to an adult.

The trial court then called the attorneys to the bench and ruled on the objection:

> The Court: Approach the bench.
>
> (Bench conference)
>
> The Court: I don't think the specifics of the outcry ha[ve] come out because it wasn't admissible. The first witness was a 17–year–old, and the law doesn't allow her to discuss the specifics of the discussion or outcry because of her age. It's hearsay as to that witness. This is the first adult witness that's just spoken concerning the allegations.
>
> [The State]: And the aunt, the grand-mother, and the grandmother's daughter all testified that they did not question the child in details or specifics.
>
> The Court: The objection's noted
>
> (Proceedings continued)
>
> The Court: Overruled.

On appeal, appellant alleges the State did not comply with the outcry statute and so Detective Silva should not have testified. However, at trial, appellant clearly objected to hearsay and then more specifically objected that Detective Silva was not the first adult to whom the outcry was made. We must determine if appellant's objection properly preserved any argument other than to challenge whether Detective Silva was the first adult to receive the outcry.

### 1. Long and later cases.

In *Long v. State,* the Court of Criminal Appeals stated that a general hearsay objection shifted the burden to the State to prove an outcry statement was admissible pursuant to article 38.072 or some other hearsay exception. 800 S.W.2d 545, 548 (Tex.Crim.App.1990) (per curiam). To admit hearsay pursuant to article 38.072, the State must comply with the statute's mandatory requirements, such as notice. *Id.* at 547. It is the State's burden to satisfy each element of the statute. *Id.* at 548. A general hearsay objection, the *Long* court stated, is enough to preserve all appellate claims under the statute. *Id.* That court specifically declined to follow cases such as *Lewis v. State,* 664 S.W.2d 345, 349 (Tex. Crim.App.1984), which held a general objection does not preserve error for review. *Long,* 800 S.W.2d at 548. Although this case is directly on point and controls, courts are inconsistent in their recognition of its holding.

Since *Long,* many courts of appeals— including this one—have addressed whether a general hearsay objection will waive a complaint for failure to comply with specific portions of the outcry statute. *See Zigakol v. State,* Nos. 14–04–01168–CR, 14–04–01169–CR, 2005 WL 3005683, at *2 (Tex.App.-Houston [14th Dist.] Nov. 10, 2005, no pet.) (not designated for publication) (holding that appellant waived error for failure to receive notice by failing to raise that issue in the trial court); *Garcia v. State,* Nos. 14–04–00676–CR, 14–04–00677–CR, 2005 WL 2429795, at *3 (Tex. App.-Houston [14th Dist.] Aug. 25, 2005, pet. ref'd) (stating error in failing to hold hearing waived when not raised below; citing *Lewis,* 664 S.W.2d at 349); *Garza v. State,* No. 04–03–00606–CR, 2005 WL 1334375, at *1 (Tex.App.-San Antonio June 8, 2005, no pet.) (not designated for publication) (noting there is a split among the

courts of appeals as to whether or not a general objection will preserve review for lack of notice, with only the Waco Court of Appeals agreeing that it will preserve review; the San Antonio Court of Appeals declined to answer the question for itself and ruled on different grounds); *Cates v. State*, 72 S.W.3d 681, 698 (Tex.App.-Tyler 2001, pet. ref'd) (determining appellant waived error for lack of hearing by not raising that specific objection at trial); *Skidmore v. State*, 838 S.W.2d 748, 753 (Tex.App.-Texarkana 1992, pet. ref'd) (holding appellant could not raise lack of notice on appeal because he did not object on that ground at trial); *Cantu v. State*, 830 S.W.2d 166, 170 (Tex.App.-Dallas 1992, no pet.) (refusing to consider ground of error because it differed from objection raised at trial); *but cf. Hayden v. State*, 928 S.W.2d 229, 231 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) (acknowledging *Long* and the burden it places on the State to satisfy the outcry statute and ultimately overruling the point of error); *Garcia v. State*, 907 S.W.2d 635, 637 (Tex. App.-Corpus Christi 1995), *aff'd on other grounds, Garcia v. State*, 981 S.W.2d 683 (Tex.Crim.App.1998) (citing *Long* and stating point of error waived on appeal where there was a motion to suppress outcry statement, but no objection at trial); *contra Laredo v. State*, 194 S.W.3d 637, 640–41 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd) (acknowledging *Long*, but determining that it did not apply because appellant had not raised a hearsay objection to the outcry testimony); *Melchor v. State*, 01–05–00630–CR, 01–05–00631–CR, 2006 WL 948056, at *2 (Tex.App.-Houston [1st Dist.] April 13, 2006, no pet.) (not designated for publication) (following *Long* and stating that general hearsay objection will preserve review on article 38.072 issue); *Barnes v. State*, 165 S.W.3d 75, 81–82 (Tex.App.-Austin, no pet.) (following *Long* and stating trial court erred when it did not hold article 38.072 hearing and then admitting the outcry testimony when appellant raised a general hearsay objection); *Gabriel v. State*, 973 S.W.2d 715, 719 (Tex. App.-Waco 1998, no pet.) (citing *Long* and holding argument regarding notice preserved by hearsay objection even though counsel at trial made arguments only about lack of reliability). Since *Long*, the Court of Criminal Appeals has reaffirmed that the State bears the burden of proving an exception for any hearsay it attempts to use at trial. *Cofield v. State*, 891 S.W.2d 952, 954 (Tex.Crim.App.1994) (citing *Long*). However, we know of no case for which it has granted discretionary review and reaffirmed that a general hearsay objection will preserve review for any claimed error under the outcry statute. Indeed, it has refused discretionary review for cases in direct conflict with *Long*. *See supra.*

Despite this mixed history, we will follow the Court of Criminal Appeals' binding precedent, and this court's recent precedent in *Laredo*. Thus, appellant preserved review on the issue of whether the State complied with the outcry statute.

**B. Analysis of the State's Compliance with the Outcry Statute**

Article 38.072, section 2 has five requirements before an outcry statement is admissible. That statute states in relevant part:

Sec. 2.   (a) This article applies only to statements that describe the alleged offense that:

(1) were made by the child against whom the offense was allegedly committed; and

(2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.

(b) A statement that meets the requirements of Subsection (a) of this article is not inadmissible because of the hearsay rule if:

(1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;

(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and

(C) provides the adverse party with a written summary of the statement;

(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.

TEX.CODE CRIM. PROC. art. 38.072. At trial, appellant specifically attacked only the requirement that the person testifying be "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." TEX.CODE CRIM. PROC. art. 38.072, § 2(a)(2). We will address this specific objection first, and then address the other aspects of the outcry statute.

### 1. Detective Silva was the proper outcry witness.

■ To be designated as the proper outcry witness, the witness must be "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." Tex.Code Crim. Proc. art. 38.072, § 2(a)(2). The trial court has broad discretion in determining who is the proper outcry witness. *Chapman v. State*, 150 S.W.3d 809, 813 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (citing cases). Absent a clear abuse of discretion, we will not disturb the trial court's ruling. *Id.* A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id.* (citing cases). The trial court did not abuse its discretion; Detective Silva met each requirement of the statute.

The State presented testimony from A.C.'s cousin, grandmother, great aunt, and Detective Silva. A.C. first told her cousin about the abuse. The extent to which she gave details is unclear. However, the trial court correctly noted that A.C.'s cousin was not 18 years old at the time A.C. made the statements. Thus, the cousin could not be the proper outcry witness. The grandmother and the great aunt both testified that they did not question A.C. about the abuse. All they knew was that something in the nature of abuse was occurring, but no details. That is not enough to qualify them as the proper outcry witness. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App.1990) (interpreting article 38.072 as requiring more than a statement giving a general allusion that something in the area of child abuse is occurring). Rather, A.C. would have had to give them details so as to describe the offense in some discernible manner. *Id.* The testimony at trial stated in clear terms that she did not give those details, and her relatives did not ask for them. The testimony also indicates Detective Silva was the first person, 18 years or older, other than Andrew Zarco, to whom A.C. made a detailed statement about the offense. The trial court did not abuse its discretion when it found Detective Silva was the proper outcry witness.

### 2. Other provisions of the statute.

#### a. Two provisions not seriously in dispute.

Two aspects of the statute are not seriously in dispute, if at all. First, that A.C.

made the statement at issue, and that she testified at the proceeding. *See* Tex.Code Crim. Proc. art. 38.072, § 2(a)(2), (b)(3). However, two provisions are potentially in dispute: hearing and notice requirements. We address those in turn.

#### b. The trial court conducted a hearing outside presence of jury.

■ A trial court is required to conduct a hearing outside the presence of the jury to determine that the outcry statement is reliable based on the time, content, and circumstances of the statement. *Id.* art. 38.072, § 2(b)(2). Below, the trial court conducted a hearing at the bench following appellant's objection. This bench conference was acceptable to fulfill the requirements of the statute. *See Denton v. State,* No. 02–05–044–CR, 2006 WL 2076534, at *8 (Tex.App.-Fort Worth, July 27, 2006, no pet.) (not designated for publication) (determining that article 38.072 hearing requirements were satisfied when trial court held a bench conference, although no witnesses were called to testify); *cf. Haley v. State,* 173 S.W.3d 510, 517 (Tex.Crim.App.2005) (holding that a bench conference is a hearing conducted outside the presence of the jury for purposes of obtaining a running objection pursuant to Texas Rule of Evidence 103(a)). Therefore, the trial court held the required hearing. By overruling the objection, it impliedly found the testimony reliable. *See Gabriel,* 973 S.W.2d at 718. We must now turn to the issue of whether the State provided adequate notice.

#### c. What is the meaning of "proceeding"?

■ To comply with the notice provisions of article 38.072, the State must do four things. First, it must provide the notice fourteen days before trial. Second, the notice must inform the adverse party of the intent to use the child's outcry statement. Third, the notice must provide the adverse party the name of the witness who will testify regarding the statement. Fourth, the notice must include a written summary of the statement. If the State fails to comply with any of the above requirements, then the notice is deficient. Here, the State failed to provide adequate notice.

The State notified appellant and his trial counsel that it would be introducing evidence through an outcry statement. That notice was adequate, as it was given at least fourteen days before trial, informed appellant the State would introduce outcry testimony, gave a description of the testimony, and identified a witness. However, thirteen days before the jury was sworn, but fourteen days before evidence was first received, the State changed its notice and corrected the identity of the outcry witness. Originally, the State had listed Aimee McAndrews as the outcry witness. The updated notice correctly listed Detective Silva as the outcry witness.

Both notices gave substantially the same information, though worded differently. Both sufficiently informed appellant of what testimony would be offered. Yet, there is a clear problem. The first notice was deficient to notify who the correct outcry witness would be. Therefore, the second, updated notice needed to comply with the statute's requirements on its own. Because the State did not give the amended notice until thirteen days before the jury was sworn, but fourteen days before opening arguments and evidence were offered, we must determine the meaning of the word "proceeding" under the outcry statute.

■ The State contends that proceeding refers to when evidence is admitted, because article 38.072 is an evidentiary statute. We disagree. In our view, the more logical interpretation—and one that

is most consistent with case law and interpretations of other portions of the Code of Criminal Procedure—is to construe proceeding as referring, at minimum, to the start of the trial, which begins when the jury is sworn.

In *Tigner v. State,* the Court of Criminal Appeals was faced with a similar question. *See* 928 S.W.2d 540, 543–46 (Tex.Crim. App.1996) (answering the question of whether "proceeding" in article 38.22 sec. 3(5)(a) included voir dire). The statute at issue in *Tigner* required the State to provide a copy of an electronically recorded oral statement to defense counsel at least 20 days before "the proceeding." *Id.* at 543. The majority opinion held that proceeding at least encompassed voir dire. *Id.* at 546. Judge White concurred in the result without separate opinion. *Id.* at 549. The dissenting judges concluded that proceeding referred to the beginning of the criminal proceeding, and thus to the point at which the jury was empaneled. *Id.* at 549 (McCormick, J. dissenting).

We believe that *Tigner,* while not expressly interpreting the outcry statute, provides guidance. All nine judges of the Court of Criminal Appeals concluded that the "proceeding" had begun at least at the time the jury was empaneled and jeopardy attached. *Id.* at 546 (majority opinion holding that "proceeding" begins at least at voir dire, and thus encompassing jury empanelment); *id.* at 549 (White, J. concurring in result); *id.* (McCormick, J. dissenting) (arguing that the proceeding began at jury empanelment, and did not begin as early as voir dire). Therefore, we hold that for purposes of the outcry statute, the proceeding below began, at minimum, when the jury was empaneled and jeopardy attached.[10]

Having determined that the word "proceeding" refers at least to the date on which the jury is sworn and empaneled, we must hold also that the State failed to comply with the notice provisions of the statute. Although the State had provided adequate notice of its intent to use an outcry statement through Aimee McAndrews more than fourteen days before the proceeding began, that notice was deficient by identifying the wrong outcry witness. The State properly modified the notice to indicate the correct outcry witness; however, that notice was deficient because it was given only thirteen days before the jury was empaneled. Therefore, we must determine whether or not that deficiency was harmful so as to require reversal.

### 3. No harm.

If the State fails to comply with the notice requirements, we will not reverse unless that failure caused harm. Article 38.072's notice requirement is to prevent surprise at trial due to the outcry testimony. *Gabriel,* 973 S.W.2d at 719. In our harm analysis, we determine if the failure caused appellant to be actually surprised by the outcry evidence and whether the failure prejudiced appellant. *See id.* at 720. Here, neither actual surprise nor prejudice was present.

Appellant could not reasonably argue actual surprise to the outcry evidence. First, he received notice more than fourteen days before proceedings began informing him what the testimony would be. That was not changed in any meaningful way. Second, appellant failed to make any argument, either in a post-trial motion or to this court, of actual surprise. In actuality, appellant did receive sufficient notice

---

**10.** We do not, and need not, determine exactly when the proceeding begins for purposes of the outcry statute.

of the statement itself; only the identity of the witness information was tardy.

Concerning prejudice, appellant has likewise failed to adduce any argument that he was prejudiced. While it is possible that a particular outcry witness could be subject to impeachment, there is nothing in the record to indicate that appellant would have impeached Detective Silva and appellant does not contend he could have impeached Detective Silva. Furthermore, the change from Aimee McAndrews to Detective Silva did not prejudice appellant because both would have been viewed by the jury as experts: Aimee McAndrews worked for the Children's Assessment Center, while Detective Silva is a police officer. Without some argument or indication that appellant was prejudiced by the State's failure to provide him fourteen days' notice of the proper witness, we cannot conclude he was harmed. We, therefore, hold that defendant suffered no harm from the deficient notice.

■ Even if appellant could show surprise and prejudice by the admission of Detective Silva's testimony, there is an ultimate hurdle he cannot overcome: when a court admits evidence over an objection, even if error, it is not reversible when the same evidence is subsequently admitted without objection. *Leday v. State,* 983 S.W.2d 713, 718 (Tex.Crim.App.1998). A.C. testified in detail about the abuse. She detailed the same testimony Silva gave regarding the abuse. There was no objection. Indeed there could be no viable hearsay objection, as A.C. testified to what she personally experienced; appellant does not argue any other basis by which the evidence could have been excluded. Because the same evidence to which Detective Silva testified was admitted through A.C. without objection, there is no harm.

We overrule appellant's second issue.

## Conclusion

Having overruled both of appellant's issues, we affirm the judgment of the trial court.

EVA M. GUZMAN, Justice, concurring.

I concur in the result, but because I respectfully disagree with the majority's emphasis on A.C.'s credibility, I write separately to address the egregious harm analysis.

Egregious harm must be assayed "in light of the entire jury charge, the state of the evidence, including the contested issues, and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Thus, analysis of harm necessarily requires an in-depth, record-intensive review in which it is appropriate to consider the strength of the testimony. However, this court should not have independently determined that A.C.'s behavior was consistent with her claims. Instead, this court should have analyzed the *effect* of the instruction's omission, and not only the evidence at issue. *See Ellison v. State,* 97 S.W.3d 698, 701 (Tex.App.-Texarkana 2003, no pet.). When no proper objection was made at trial, charge error does not require reversal unless it is so egregious that the defendant was denied a fair and impartial trial. *Almanza,* 686 S.W.2d at 171. Thus, we review the record as a whole to "illuminate the actual, not just theoretical, harm to the accused." *Id.* at 174. Errors that result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996) (en banc) (quoting *Almanza,* 686 S.W.2d at 172).

I agree with the majority's conclusion that the charge error did not result in egregious harm. First, the charge error did not affect "the very basis of the case" during the punishment phase of trial. This is a theoretical injury not supported by the record. During the punishment phase, the State introduced no new evidence, and suggested no specific punishment. The State did not emphasize extraneous offenses, but stated only the following:

Now, in assessing punishment, it's your duty—it's within your judgment to decide what's the best punishment for Andrew Zarco under these circumstances, under all the facts you've heard. And basically you've heard all of the facts of the case. There's no additional evidence of prior convictions or felony cases, but what you can look to in deciding this is the facts of this particular case.

And just some things to think about. *How many times it was done, how it was done, the types of things that were done to the victim.* I mean, all of that you can take into consideration.

[emphasis added]. As the majority pointed out, the State spent most of its argument discussing the charge. Appellant does not dispute the sufficiency of the evidence to sustain his conviction, and the punishment assessed was at the low end of the statutory range of punishment. *See Bolden v. State,* 73 S.W.3d 428, 432 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd) (holding that egregious harm was not shown by the omission of a reasonable doubt instruction in the punishment phase where the evidence of the appellant's guilt

for the charged offense was not "debatable" and the punishment assessed was at the low end of the range of punishment). Thus, the extraneous offenses, while referenced somewhat ambiguously in a single sentence of the prosecution's argument during the punishment phase, did not form "the very basis" of the case.[1]

The charge error also did not affect appellant's valuable rights. Specifically, the appellant argues that the jury was more likely to impose imprisonment rather than probation as a result of the charge error. But "[t]he granting of community supervision is a *privilege,* not a right...." *Speth v. State,* 6 S.W.3d 530, 533 (Tex. Crim.App.1999) (en banc) (emphasis in original); *see also Flores v. State,* 904 S.W.2d 129, 130 (Tex.Crim.App.1995) (en banc) (stating "there is no fundamental right to receive probation"); *Kelly v. State,* 483 S.W.2d 467, 469 (Tex.Crim.App.1972) ("It should be remembered that a defendant is not entitled to probation as a matter of right...."). The jury was correctly instructed on the range of punishment it could consider, and I presume the jury followed this instruction. *See Hutch,* 922 S.W.2d at 171–72.

Additionally, the charge error did not "vitally affect a defensive theory." The defense argument that probation was appropriate was supported by the testimony of two witnesses who testified that if the appellant was given probation, they would help him successfully complete it. However, testimony that the appellant might receive assistance in completing probation is not necessarily evidence that probation is an adequate or appropriate punishment or

---

1. To the extent that extraneous offenses form a part of the guilt/innocence phase of trial, the offenses were considered only in connection with a proper instruction. Although the statement in the punishment phase can be construed as a request that the jury consider all allegations of extraneous offenses as well as the charged offense, it can also be interpreted as suggesting that the jury consider only acts that actually "were done," and were not merely unproven allegations.

deterrent in the case.[2] Here, Detective Silva testified that appellant claimed A.C., who was between six and eight years old at the time, "trie[d] to be sexy," and wore skimpy clothing. If the jury construed these statements as an indication that appellant placed some blame on A.C. for appellant's own conduct, such a belief could account for the jury's failure to recommend community supervision even in the absence of extraneous offense evidence. *See Pickett v. State*, No. 05–98–01174–CR, 1999 WL 793397, at *1 (Tex. App.-Dallas Oct.6, 1999, no pet.) (not designated for publication) (affirming the revocation of a sex offender's probation where the offender did not progress in a treatment program but instead "continued to minimize the offense and blame the victim").

Although I would focus more on the effect of the error and less on A.C.'s credibility, I concur in the majority's holding that the charge error does not require reversal. On this record and for the reasons discussed above, no egregious harm has been shown.

2. It is also noteworthy that one of these witnesses was appellant's mother, who testified in the guilt/innocence phase of trial that the abuse could not have occurred in the small house as alleged because she kept her bedroom door open and would have overheard it. Nevertheless, the jury found that the appellant did commit the charged offense. The jury may have decided that appellant's mother was not credible, or may have found that she was simply unaware of the abuse occurring in her own home. Either conclusion could lead the jury to conclude that appellant would not have his mother's support and supervision in completing probation.