In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00174-CR


______________________________




OLIVER HART, III, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


 Bowie County, Texas


Trial Court No. 04F0275-005




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Charged with manufacture of a controlled substance, (1) methamphetamine, Oliver Hart, III,
had absconded in the middle of his trial and had been convicted in absentia. (2) Then during the
ensuing punishment phase of trial, with Hart still missing, the State provided evidence that Hart had
previously been convicted six times for various misdemeanors and that Hart had also recently
engaged in two additional extraneous offenses which had not been prosecuted to conviction. (3)

 The sole question before us on this appeal is whether Hart suffered egregious harm because
the jury was not instructed during punishment to consider extraneous offenses only if it found
beyond a reasonable doubt (4) that Hart had committed them. Because we find no egregious harm from
the charge error, we affirm the trial court's judgment.

 A defendant is entitled to have the jury receive a reasonable-doubt instruction regarding
extraneous offenses, even without request. Huizar, 12 S.W.3d at 483. It is error if the trial court
fails to so instruct the jury, even sua sponte. See id.; Graves v. State, 176 S.W.3d 422 (Tex.
App.--Houston [1st Dist.] 2004, no pet.). A defendant need not object at trial to preserve error. 
Huizar, 12 S.W.3d at 483. The failure to object increases appellant's burden on appeal, imposing
a higher hurdle appellant must overcome--namely egregious harm--before we can reverse. Id.;
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

 As there was no objection to the charge error, we will reverse only if the error amounted to
egregious harm. Zarco, 210 S.W.3d at 823 (citing Saunders v. State, 817 S.W.2d 688, 692 (Tex.
Crim. App. 1991); Almanza, 686 S.W.2d at 171). 

 Egregious harm exists when the defendant's rights are injured to the point that he or she was
denied a fair and impartial trial, when the error (1) went to the very basis of the case; (2) denied the
defendant a valuable right; or (3) vitally affected his or her defensive theory. Almanza, 686 S.W.2d
at 172. Egregious harm is the highest standard of harm an appellant must meet to obtain a reversal,
in part because it involves error raised for the first time on appeal. Zarco, 210 S.W.3d at 824.

 In making our determination of whether egregious harm exists, we will review generally the
following at both phases of trial: (1) the state of the evidence; (2) closing argument and the degree
to  which  the  error  may  have  been  emphasized  at  the  punishment  phase;  (3)  the  jury  charges;
and (4) the punishment ultimately assessed. Id. (citing Davis v. State, 28 Tex. App. 542, 13 S.W.
994, 995 (1890); Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); Almanza, 686
S.W.2d at 173-74.

 The facts of this case are somewhat unusual. According to statements by his trial counsel,
Hart refused to assist him in preparing for trial, failed to keep appointments with counsel for that
purpose, and failed to either accept or reject a plea offer of five years' imprisonment. In addition,
witnesses for the defense refused to testify. In a move that likely did not endear him to the jury, Hart
also skipped out of trial during the noon recess between jury selection and trial and was convicted
in absentia. He did not appear the following morning for sentencing, and that proceeding was also
conducted in his absence. During the time that Hart was on the run, counsel had no contact with
him. Even Hart's mother, who had attended part of the trial, refused to come to trial and testify for
her son during the punishment phase.

 Although Hart complains of the six prior misdemeanor convictions, he focuses mainly on the
admission of evidence about two additional extraneous offenses that were not final convictions. 
These extraneous offenses occurred after his arrest and while he was out on bail in this case. Both
arose out of a videotaped vehicular chase, during which Hart evaded arrest with a vehicle and then
was found in possession of a vial of what was later determined to be methamphetamine.

 On February 17, 2004, Texarkana, Texas, Police Officer Shawn Jacobs attempted to stop a
vehicle with expired tags. The driver (Hart) attempted to escape. After a car chase, Hart stopped
the car, jumped out, and ran into a wooded area--where, in the darkness, he ran headlong into an
overhanging tree, knocking himself to the ground where Jacobs caught up with him. Jacobs kept
Hart on the ground until a backup officer, Jeffrey Johnston, arrived and they could handcuff Hart,
who was yelling and screaming throughout the incident into his cellular telephone about how he was
being hurt by the officers. Incident to Hart's arrest, officers searched him and found in Hart's pocket
a vial containing what proved to be methamphetamine.

 Johnston testified that the vial was sent to the laboratory for testing and was determined to
contain methamphetamine. This evidence came in without objection. Counsel objected to the
evidence later on cross-examination when he discovered that Johnston had not personally analyzed
the contents of the vial. The objection and request to strike was overruled. 

 Our review of the record shows that the six prior convictions were effectively proven by
testimony and documents showing the convictions and by testimony from Hart's community
supervision officer connecting Hart to the convictions. There was no contrary proof or uncertainty
injected into the proceedings as to those six convictions. The proof of Hart's attempt to escape police
pursuit was shown by video evidence, and there was no evidence to the contrary. The substance in
the vial was tested by a laboratory and determined to contain methamphetamine. Except for the fact
that Johnston had not personally tested the vial's contents but had sent it to a laboratory for analysis,
no evidence cast doubt on any of the extraneous offenses.

 The trial court's punishment jury charge did not mention any extraneous offenses. The
extraneous offenses were the focus of the State's closing arguments, with special attention being paid
to the last offenses, as they occurred after Hart's arrest and before his trial in the current prosecution. 
The punishment assessed for manufacture of a controlled substance could have ranged from five to
ninety-nine years or life, along with a maximum fine of up to $10,000.00. The State asked the jury
to assess Hart's punishment at twenty-five years. Hart's defense counsel waived any closing
argument. The jury assessed his punishment at thirty years, and a fine of $10,000.00.

 It was apparent from the trial that Hart has a long history of minor drug offenses and minor
assaultive offenses. The evidence suggests that he had now graduated to a higher level of offense,
not merely possessing small amounts of marihuana, but making somewhat larger amounts of
methamphetamine. The evidence of six prior convictions and of his later attempt to elude police
pursuit was strong and, in the complete absence of any evidence to suggest that he had not
committed those offenses, is clearly well beyond the reasonable-doubt standard. Two of his prior
convictions had resulted in community supervision, which was later revoked in each case. Two
other prior offenses involved convictions for family violence. Thus, the absence of the charge on
those matters cannot reach the egregious-harm standard. The prison time assessed, although
substantial, was less than one-third of the maximum sentence. 

 We conclude that the one piece of evidence that was in any way questioned by Hart's
counsel--that is, the contents of a small vial--is not of such impact (in the context of his extensive
criminal history and in light of the officer's testimony) to convince us that the absence of such an
instruction as to that single matter would result in such egregious harm as to make us doubt the
veracity of the punishment assessed.

 We affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 19, 2009

Date Decided: March 5, 2009


Do Not Publish
1. See Tex. Health & Safety Code Ann. § 481.112 (Vernon 2003).
2. This is authorized by law if the defendant initially appeared but absented himself or herself
after pleading to the indictment or information or after jury selection in a jury trial. See Tex. Code
Crim. Proc. Ann. art. 33.03 (Vernon 2006).
3. Because these eight acts were not alleged in the indictments, the testimony regarding these
acts amounts to evidence of extraneous offenses. See Vernon v. State, 841 S.W.2d 407, 410-11
(Tex. Crim. App. 1992). Therefore, at punishment, the trial court was required to give a reasonable
doubt instruction regarding them. See Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000);
Zarco v. State, 210 S.W.3d 816, 821 (Tex. App.--Houston [14th Dist.] 2006, no pet.). Its failure
to instruct the jury accordingly was error. See Huizar, 12 S.W.3d at 484.
4. At the punishment phase of a criminal trial, the State may introduce evidence of "an
extraneous crime or bad act that is shown beyond a reasonable doubt." Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008). This standard of proof is law applicable to the case. 
Huizar, 12 S.W.3d at 484.