**AFFIRMED and Opinion Filed November 29, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00523-CR

### JOSE ANTONIO HERNANDEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-83306-2020**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Goldstein
Opinion by Justice Goldstein

Jose Antonio Hernandez appeals his conviction of continuous sexual assault of a child younger than fourteen. A jury convicted Hernandez and sentenced him to forty-seven years' confinement. In two issues, Hernandez argues the trial court erred in allowing one witness to testify as an outcry witness because the State failed to provide notice of its intent to offer the testimony and allowing another witness to testify as an outcry witness without conducting a hearing pursuant to article 38.072 of the code of criminal procedure. We affirm the trial court's judgment.

In November 2020, Hernandez was charged by indictment with the offense of continuous sexual assault of J.T., a child younger than fourteen, during a seven-year period from July 2013 to July 2020.

Prior to trial, the State filed notice of its intent to use hearsay statements of child abuse from two witnesses: H.T., J.T.'s brother, and Lisa Martinez, a forensic interviewer at the Children's Advocacy Center in Collin County. The notice did not list J.T.'s Mother as an outcry witness.

At trial in June 2021, outside the presence of the jury, the trial court addressed preliminary matters outside the presence of the jury, including what the State called "outcry hearings." The State first called Mother, who testified she asked J.T. if Hernandez had touched him, and J.T. said yes and started crying. J.T. was sitting down when he spoke to Mother, and "he simply put his hand on his butt." Hernandez' counsel took Mother on voir dire and asked how many incidents of sexual contact she discussed with J.T., and Mother said there was "only one." Mother testified J.T. "pointed to where he'd been touched," and he "was crying and he was telling this person to stop and he wouldn't stop."

After Mother testified, the prosecutor said the next witness, Martinez, was "going to be our outcry, because based on mom's testimony, I don't believe that she is." Hernandez' counsel disagreed, stating that "she was the first person over 18 that was told about the sexual abuse." The prosecutor said he had "one more witness for the outcry," and Hernandez' counsel stated the following:

Judge, to save time, do you want us to prove this up real quick? Judge, we all know what the forensic interviewer is going to come up here and say. I guess, at the end of the day she's going to say she saw, you know, whatever more incidents of abuse than what was discussed up there. Is this a situation where you would allow her to testify as to hearsay because of a continuing outcry, or is this something where you would only let [Mother] come in, as she was the first person that was aware of the sexual abuse over 18?

The trial court expressed its understanding that "you can have multiple outcry witnesses who testify to various things that were told to them." The prosecutor responded that "Mom's information on the facts of this case are very limited, and they are limited to exactly what she got up there and talked about." Hernandez' counsel stated:

if that's the case, you know, we would object on those grounds, you know, that she was the first person over 18. I understand the Court is going to let her do it. But based on the information that was provided in the outcry, if she's going to testify to the same, we would understand.

The trial court stated that, if the forensic interviewer was "the first person other than the mom over the age of 18 that the child talked to, then certainly she's an outcry witness." The trial court then brought in the jury.

Mother testified that J.T. is one of her three sons, and he was born in July 2007. At that time, Mother and her sons were living in an apartment in Frisco. In 2008, Mother met Hernandez, and the two started dating. After losing her job, Mother and her sons moved in with Hernandez. From 2008 to 2012, Mother, her sons, and Hernandez lived together in Frisco, and they moved to Denton in 2013 and stayed until 2016. While living in Denton, Hernandez broke his foot and could no

–3–

longer work; as a result, Hernandez "was at the house all the time" and was often left alone with the boys. In 2016, the family moved back to an apartment in Frisco for two years before moving back to Denton County for a year and then moving back to Frisco in 2019.

In August 2020, one of Mother's other sons told her that he had been abused by Hernandez. This prompted Mother to ask J.T. if Hernandez had touched him. J.T. said he was abused, but his statements were "more general." When Mother asked J.T. how Hernandez touched him, J.T. started crying and told Mother "that he would tell him to stop and that he would hurt him."

Forensic interviewer Martinez testified J.T., thirteen years old at the time, made an outcry of abuse during a forensic interview and identified Hernandez as the abuser. J.T. told Martinez that Hernandez took him into the bedroom "when no one was around" and abused him on multiple occasions. Hernandez put his male sexual organ in J.T.'s "butt" and in J.T.'s mouth and Hernandez also put his mouth on J.T.'s male sexual organ and made J.T. put his male sexual organ in Hernandez' "behind." J.T. said the abuse happened "over several years."

J.T. testified that, the first time Hernandez touched him, Hernandez began touching on J.T.'s legs and then moved up to touch J.T.'s penis over and "sometimes" under his clothes. When the abuse began, J.T. was seven or eight years old, and J.T. "didn't really comprehend what was happening." When J.T. was nine or ten, the family had moved into "the green apartments" where they stayed for "at

–4–

least a year." While living at the green apartments, Hernandez had an injured leg, he was not working, and he was "home all the time." As a result, J.T. spent "a lot more time" with Hernandez, and J.T.'s mother was "working a lot." At the green apartments, Hernandez began "touching [J.T.] more often." When J.T. came home from school, Hernandez "would at least say hi once" and then Hernandez would touch J.T.'s penis. Hernandez told J.T. "to not tell anybody" and to "enjoy it." J.T. "didn't know what was happening, so [he] would just ignore everything." After Hernandez rubbed J.T., he would take J.T. into the bedroom and tell him to remove all his clothes. While J.T. removed his clothes, Hernandez would shower and, when Hernandez finished showering, Hernandez would lie J.T. on the bed, sometimes on his back and sometimes on his stomach, "put his penis in [J.T.], like, in [J.T.'s] butt." This "hurt" J.T., and Hernandez did it "more than one time." Also more than once, Hernandez "would tell [J.T.] to put [Hernandez'] penis in [J.T.'s] mouth," and Hernandez put his hands on J.T.'s head, moved J.T.'s head "forwards and backwards," and said "'It feels so good' and 'Keep on going.'" While J.T. lived at the green apartments, "these types of things" were "happening quite often."

After the family left the green apartments, they moved to "the Little Elm trailers" where the abuse continued and "happened more times" than when the family lived at the green apartments. Hernandez started doing "different" things like "putting his mouth on [J.T.'s] penis" and "kissing [J.T.] and stuff." J.T. "didn't like it," and "it felt weird." After the abuse, Hernandez told J.T. he would buy J.T.

–5–

"legos" and "new technology." Sometimes, Hernandez told J.T. to put his "penis inside of [Hernandez'] butt," and Hernandez continued to "put his penis inside of [J.T.'s butt."

The family next moved to "the red apartments" in Frisco where J.T. had his own room. The abuse continued but "not frequently." J.T. tried to avoid Hernandez by talking to his friends on his phone and going to his room. J.T.'s door did not have a lock, but he "tried to put a shoe under to, like, block it." Hernandez told J.T. he would buy J.T. "big lego sets" or a new phone to get J.T. to "do these things with him." J.T. was "used to it too much" and would "just try to get over with it."

J.T. finally disclosed the abuse when his brother asked about it, and J.T. told his brother and mother about the abuse. When J.T. told his mother and brother about the abuse, J.T. did not see Hernandez again until trial. At the conclusion of the trial, the jury convicted Hernandez of continuous sexual assault of a child younger than fourteen. This appeal followed.

In his first issue, Hernandez argues the trial court erred in allowing Mother to testify as an outcry witness because the State failed to provide notice of its intent to offer her testimony as required by article 38.072 of the code of criminal procedure.

Article 38.072, sets forth the requirements before an outcry statement is admissible. Specifically, the statute provides in relevant part:

> Sec. 2. (a) This article applies only to statements that describe the alleged offense that:

(1) were made by the child against whom the offense was allegedly committed; and

(2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.

(b) A statement that meets the requirements of Subsection (a) of this article is not inadmissible because of the hearsay rule if:

(1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;

(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and

(C) provides the adverse party with a written summary of the statement;

(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.

TEX. CODE CRIM. PROC. art. 38.072.

If the State fails to comply with the notice requirements, we will not reverse unless that failure caused harm. *Zarco v. State*, 210 S.W.3d 816, 832 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Article 38.072's notice requirement is to prevent surprise at trial due to the outcry testimony. *Gabriel v. State*, 973 S.W.2d 715, 719 (Tex. App.—Waco 1998, no pet.). In our harm analysis, we determine if the failure caused appellant to be actually surprised by the outcry evidence and whether the failure prejudiced appellant. *Zarco*, 210 S.W.3d at 832. However, even if Hernandez could show surprise and prejudice by the admission of Mother's

testimony, there is an ultimate hurdle he cannot overcome: when a court admits evidence over an objection, even if error, it is not reversible when the same evidence is subsequently admitted without objection. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

Here, mother testified J.T. said Hernandez abused him, but his statements were "more general." When Mother asked J.T. how Hernandez touched him, J.T. started crying and told Mother "that he would tell him to stop and that he would hurt him."[1] In contrast, J.T. testified at length detailing the abuse Hernandez committed against J.T. over a period of years. Hernandez did not object to J.T.'s testimony. Because the same evidence to which Mother testified was admitted through J.T.'s testimony, we conclude Hernandez cannot show harm. *See id.* We overrule Hernandez' first issue.

In his second issue, Hernandez complains that the trial court erred in allowing the hearsay testimony of Martinez as an outcry witness without conducting a hearing pursuant to article 38.072 of the code of criminal procedure.

A trial court is required to conduct a hearing outside the presence of the jury to determine that the outcry statement is reliable based on the time, content, and circumstances of the statement. TEX. CODE CRIM. PROC. art. 38.072 § 2(b)(2). Here,

---

[1] After Mother's testimony, the State's attorney advised the court, for purposes of the appellate record, that it never elicited outcry statements while Mother was on the stand. Rather, any such testimony was on cross-examination by defense counsel. Based upon the foregoing, the State agreed Mother was not a proper outcry witness. This acknowledgement does not affect this Court's harm analysis.

the trial court conducted what the State called "outcry hearings" outside the presence of the jury. Hernandez' counsel, to the extent he objected at all, objected on the grounds that Mother "was the first person over 18"; counsel did not object to the fact that Martinez was not called as a witness at the hearing. In fact, when the prosecutor said he had "one more witness for the outcry," Hernandez' counsel stated, "we all know what the forensic interviewer is going to come up here and say" and participated in the expedited conclusion of the hearing without objecting to Martinez' failure to testify. Under these circumstances, we conclude Hernandez failed to preserve error on this issue. *See* TEX. R. APP. P. 33.1(a). Moreover, as with Mother's testimony, any error in the admission of Martinez' testimony was harmless because of the admission of similar testimony from J.T. without objection. *See Leday*, 983 S.W.2d at 718. We overrule Hernandez' second issue.

We affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
210523F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JOSE ANTONIO HERNANDEZ,
Appellant

No. 05-21-00523-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-83306-
2020.
Opinion delivered by Justice
Goldstein. Justices Schenck and
Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered November 29, 2022