Opinion issued April 8, 2010















 







In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00622-CR




WILLIE EUGENE ROLLINS III, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1113805




MEMORANDUM OPINION
            A jury convicted appellant, Willie Eugene Rollins III, of aggravated sexual
assault of a child and assessed punishment at thirty-three years’ imprisonment.


 In
one issue, appellant argues that he received ineffective assistance of counsel because
his trial counsel failed to object (1) to improper outcry testimony and (2) to improper
bolstering of a witness.
          We affirm.
BACKGROUND
          In July 2006, the complainant, K.W., a twelve-year-old female, traveled from
Austin, Texas to Houston, Texas to visit two family friends, known to her as “aunts,”
Mishay Vinson and Roshandra Boudreaux. During the visit, the complainant and
appellant traveled to Louisiana to visit Linda Ware, appellant’s mother and the
complainant’s godmother. Although they intended for the trip to last approximately
two weeks, they returned to Houston after four days because appellant wanted to see
his girlfriend. They arrived in Houston around 2:00 a.m. on an unspecified Friday
late in July, and they called Boudreaux upon their arrival. Boudreaux told the
complainant to stay with appellant that night because it was late, but she informed the
complainant that she would pick her up after work the following day. Alona Hudson,
a friend of appellant, drove the complainant and appellant to the apartment where he
and his girlfriend lived. That night the complainant slept on the couch while
appellant and his girlfriend slept in the apartment’s single bedroom. 
          The next day, appellant took his girlfriend to work, picked up food from his
sister’s nearby apartment, and returned to the apartment that he shared with his
girlfriend. Following his return, appellant instructed the complainant to take a
shower. The complainant did so, but she neglected to take a towel or clean clothing
with her, and she asked appellant to bring them to her. When appellant brought the
items to her, he looked at her in a way that made her feel “scared” and “weird.” 
          Approximately twenty minutes after the complainant finished her shower,
appellant called her into the bedroom and asked her about her age and whether she
had ever had sex or wanted to have sex. Then appellant told her to take her pants off
and lie down on the bed; the complainant complied. Appellant then penetrated
complainant’s vagina with his penis. Appellant instructed the complainant not to tell
anyone about the assault.
          On August 1, 2006, the complainant, while still in Houston and staying with
her aunt, Boudreaux, experienced burning while urinating and discovered blood in
her urine. She told Boudreaux about the bleeding, and Boudreaux called the
complainant’s mother, Monique Williams, and told her.
          A week later, on August 6, 2006, the complainant, still experiencing
discomfort, returned to Austin. When she arrived in Austin, her mother took her to
Brackenridge Hospital. 
          At the hospital, the complainant was diagnosed with a bladder infection. She
was asked by the nurses whether she had ever had sex or whether anyone had
improperly touched her. An intake nurse, Racquel Long, explained what it meant to
be sexually active, and, following the explanation, the complainant told Long she had
had sex without her consent. Long informed the complainant’s mother of the assault
and referred the complainant to Carmen Bell, a social worker at the hospital who was
on call for the emergency room. 
          Bell spoke with the complainant and completed a “Social Service Risk of
Abuse Assessment,” which included Long’s description of the assault. Upon
confirming that the complainant had been sexually assaulted, Bell contacted the
police departments in Austin and Houston, and an unspecified person contacted Child
Protective Services (CPS). The complainant provided statements to both CPS and the
Houston Police Department.


 The complainant also identified appellant from a photo
spread as her assailant. A Harris County grand jury indicted appellant for aggravated
sexual assault of a child. 
          At trial, the complainant described the assault. She testified that the
complainant put his penis in her vagina, that he lay on top of her “and kept going,”
he ejaculated on her stomach, he cleaned her up with a towel, and he indicated to her 
he wanted her to perform oral sex on him, but she refused. Then she testified that she
did not tell anyone of the assault until she told the nurse at the hospital, but that she
saw appellant one more time before returning to Austin. After the complainant
testified, her mother, Williams, testified about the complainant’s trip to Houston and
Louisiana, her demeanor throughout the trip, and her description of her medical
problems. Williams testified that she first learned of the assault at the hospital, and
stated that she did not have any reason to doubt the veracity of her daughter’s
testimony.
          Bell testified as the State’s outcry witness; Long did not testify. Bell testified
that K.W. had come in for blood in her urine, and during the intake process it was
discovered that she was sexually active, mandating an automatic referral to her as the
social worker in the emergency room. The referral stated that K.W. “was not sexually
active but it had happened against her will.” She interviewed K.W. first, and then
interviewed K.W. and her mother together. 
          Bell testified that K.W. “was very sad and she was tearful and crying.” She
described this behavior as typical of sexual assault victims. She verified that her
notes stated “that the patient admitted to vaginal intercourse after receiving
explanation of what being sexually active meant” and that that explanation was made
by the initial nurse before referral to her. Bell testified that K.W. told her she was not
a willing participant, but she “laid down on the bed” and “her God brother asked her
to come into his room and asked her to take off her pants and she said that he only did
it a few times.” 
          Bell testified that, as a matter of hospital procedure, she only asks a child
victim of sexual assault for enough details to make a proper referral. Once she
“found out that she had in fact had intercourse and it had been by someone that was
an adult, which would make it sexual assault of a child,” she “made the appropriate
referral to the police department and the jurisdiction in which the assault happened.”
Bell testified that K.W. was 12 years old at the time of the assault. She further
testified that, as an intermediary, she did not try to get the entire story; rather, to
“keep a testimony of the child as intact as possible,” she deferred to the appropriate
agency doing the forensic interview. Appellant’s trial counsel requested that the
statement that the complainant made to Bell be read into evidence. The attorneys
agreed that it was already in evidence as part of the medical record.



          The State then called Officer J. Barnes, a member of the Houston Police
Department who investigates juvenile sex crimes. Officer Barnes testified that the
Austin Police Department conducted the complainant’s forensic interview, at his
request, and obtained a statement from the complainant. He further testified that he
provided the Austin Police Department with a photo spread, which included a picture
of appellant, and that the complainant identified appellant in the photo spread. 
          As its final witness, the State called Dr. Lawrence Thompson, a clinical
psychologist with expertise in child sexual abuse, who testified about the reasons
why a child might not make an outcry earlier and might have inconsistences in her
renditions of a sexual assault.
          During the cross examination of the State’s witnesses, appellant’s trial counsel
showed that the complainant’s testimony and the statements she had provided to the
nurses at the hospital, to the police, and to CPS contained differences. Officer
Barnes testified that the police report included a statement that the complainant
performed oral sex on appellant and that she told her mother of the assault while she
was still in Houston. Officer Barnes also testified that a report produced by CPS
indicated that the complainant reported she did not see appellant after the assault. 
During his cross-examination of Officer Barnes, appellant’s trial counsel contrasted
the contents of Bell’s report with the contents of the police report and appellant’s
testimony and emphasized the differences in the complainant’s descriptions of the
assault.


 He also contrasted the complainant’s testimony that she saw the appellant
after the assault with the CPS report in which the complainant said she had not seen
appellant since the assault.
          The defense called four witnesses. The first witness for the defense was
Tamara Shaw, appellant’s girlfriend. Shaw testified that she did not leave appellant
and the complainant alone in the apartment, but she also testified that she was at
work on the day of the assault. The defense then called Alona Hudson, who testified
that she picked appellant and the complainant up from the bus station and that she
was with them on the day of the assault. Next, the defense called Kiesha Rollins,
appellant’s sister, who testified that appellant left the complainant with her on the
day of the assault. Then the defense called the complainant and questioned her about
the inconsistencies in her testimony, and specifically whether she believed that the
statement she gave at the hospital was complete. The complainant testified that her
statement at the hospital was incomplete because she had not known how to convey
all of the details of her assault at that time. The defense recalled appellant’s sister,
who testified about Linda Ware’s visit to Houston after the assault. 
          The jury found appellant guilty of aggravated sexual assault, found his
enhancement paragraphs true, and assessed his punishment at thirty-three years’
imprisonment. Appellant did not file a motion for a new trial. 
 INEFFECTIVE ASSISTANCE OF COUNSEL
          Appellant’s sole issue on appeal is that he received ineffective assistance of
counsel. He contends that his counsel was ineffective because he failed to object to
Carmen Bell as an improper outcry witness and he neglected to object to testimony
concerning the complainant’s credibility by her mother. Appellant argues that his
trial counsel’s deficient performance undermines confidence in the outcome of the
case. 
A.      Standard of Review
          We evaluate the effectiveness of counsel under the two-pronged test
enunciated in Strickland v. Washington. 466 U.S. 668, 690, 104 S. Ct. 2052, 2066
(1984); Hernandez v. State, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). First, the
appellant must show that his trial counsel’s representation fell below an objective
standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. To
prove this deficiency in representation, the appellant must demonstrate that his trial
counsel’s performance deviated from prevailing professional norms. Id. at 688, 104
S. Ct. at 2065; McFarland v. State, 845 S.W.2d 824, 842–43 (Tex. Crim. App.
1992). Second, the appellant must show prejudice. Strickland, 466 U.S. at 687, 104
S. Ct. at 2064. To show prejudice, the appellant must show a reasonable probability
that, but for his counsel’s unprofessional errors, the result of the proceeding would
have been different. Id. at 694, 104 S. Ct. at 2068. A reasonable probability is a
probability sufficient to undermine confidence in the outcome. Id. The appellant
bears the burden of proving by a preponderance of the evidence that his trial counsel
was ineffective. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
When an appellant fails to satisfy one prong of the Strickland test, the reviewing
court need not consider the other prong. Strickland, 466 U.S. at 697, 104 S. Ct. at
2069.
          Under normal circumstances, the record on direct appeal will not be sufficient
to show that counsel’s representation was so deficient and so lacking in tactical or
strategic decision making as to overcome the presumption that his conduct was
reasonable and professional. Rylander v. State, 101 S.W.3d 107, 110–11 (Tex. Crim.
App. 2003); Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). We cannot
speculate beyond the record provided; rather, a reviewing court must presume that
the actions were taken as part of a strategic plan for representing the client. 
Rylander, 101 S.W.3d at 110–11. Ineffective assistance of counsel claims must be
firmly founded in the record. Bone, 77 S.W.3d at 835. That record must itself
affirmatively demonstrate the alleged ineffectiveness. Id. at 833. A defendant must
prove, by a preponderance of the evidence, that there is, in fact, no plausible
professional reason for a specific act or omission. Id. at 836. Generally, to show
ineffective assistance of counsel for failure to object during trial, the appellant must
show that the trial court would have committed error in overruling the objection. Ex
parte White, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (citing Vaughn v. State, 931
S.W.2d 564, 566) (Tex. Crim. App. 1996)). 
B.      Failure to Object to Improper Outcry Witness
          Appellant first argues that his trial counsel’s failure to object to Bell as an
improper outcry witness, his failure to request a hearing on the admissibility of the
outcry testimony, and his failure to object to the State’s late filing of its notice of
intent to use outcry testimony constituted ineffective assistance of counsel.
          The version of article 38.072, section 2 of the Texas Code of Criminal
Procedure that was in effect at the time of this case contains four requirements that
must be met before an outcry statement is admissible. Section 2(a) states: 
Sec. 2. (a) This article applies only to statements that describe 
 the alleged offense that:
 
(1) were made by the child against whom the offense was
allegedly committed; and
 
                    (2) were made to the first person, 18 years of age or older,
other than the defendant, to whom the child made a
statement about the offense.
 
Act of Sept. 1, 1995, 74th Leg., R.S., ch. 76, § 14.25, 1995 Tex. Gen. Laws 834, 835
(amended 2009) (current version at Tex. Code Crim. Proc. art. 38.072 (Vernon
Supp. 2009)). “The provisions of article 38.072 are mandatory and must be followed
for the outcry statement to be admissible over a hearsay objection.” Moore v. State,
233 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing Duncan
v. State, 95 S.W.3d 669, 671 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d)). If
the trial court overrules a hearsay objection without complying with the provisions
of article 38.072, then the trial court has committed error. Id. (citing Long v. State,
800 S.W.2d 545, 548 (Tex. Crim. App. 1990)). 
          Here, appellant complains of his counsel’s failure to object to improper outcry
testimony in the context of his ineffective assistance of counsel claim. In this
context, appellant has the burden to show that his counsel’s decision was “so
deficient and so lacking in tactical or strategic decisionmaking as to overcome the
presumption that counsel’s conduct was reasonable and professional.” Bone, 77
S.W.3d at 833. Appellant has not made such a showing. Instead, appellant argues,
“If this Court cannot conjure any conceivable strategy that would suggest counsel’s
inaction, then it would be improper to simply indulge in the fantasy that counsel may
yet have had one.” Such an argument inverts the Strickland analysis. Bone, 77
S.W.3d at 836. Thus, appellant provides no argument that his counsel’s decision
making was without a strategic or tactical basis, as required by Strickland. Id. at 833. 
Although appellant has not made the required argument, the State contends that
Bell’s testimony was admissible under two different hearsay exceptions and,
therefore, appellant’s counsel may have elected not to object for that reason.



          Had appellant shown that his counsel was deficient, he would have then been
required to show that he suffered prejudice from this deficiency. Bone, 77 S.W.3d
at 833. Appellant’s brief does not provide any indication that he suffered prejudice
from his counsel’s failure to object. Therefore, we hold that appellant has not
satisfied his burden to demonstrate that his trial counsel was ineffective in his failure
to object to Bell’s testimony as improper outcry witness testimony. Because we
concluded that appellant did not meet the requirements to show ineffective assistance
of counsel, we need not determine whether Bell was a proper outcry witness.



C.      Failure to Require Compliance with Article 38.082 
          Appellant also argues that his trial counsel was ineffective for failing to object
to Bell as an outcry witness because he received inadequate notice that she was to
be an outcry witness and because the trial court did not conduct a hearing to
determine the reliability of Bell’s testimony, as required by article 38.072 of the
Code of Criminal Procedure in effect at the time of this case.
          Article 38.072, section 2(b) provides: 
(b) A statement that meets the requirements of Subsection (a) of
this article is not inadmissible because of the hearsay rule if:
 
(1) on or before the 14th day before the date the
proceeding begins, the party intending to offer the
statement:
 
(A) notifies the adverse party of its intention to do
so;
 
(B) provides the adverse party with the name of the
witness through whom it intends to offer the
statement; and
 
(C) provides the adverse party with a written
summary of the statement;
 
(2) the trial court finds, in a hearing conducted outside the
presence of the jury, that the statement is reliable based on
the time, content, and circumstances of the statement; and
 
(3) the child testifies or is available to testify at the
proceeding in court or in any other manner provided by
law.
 
Act of Sept. 1, 1995, 74th Leg., R.S., ch. 76, § 14.25, 1995 Tex. Gen. Laws 835
(amended 2009) (current version at Tex. Code Crim. Proc. art. 38.072 (Vernon
Supp. 2009)). As stated above, the provisions of article 38.072 are mandatory and
must be followed for the outcry statement to be admissible over a hearsay objection. 
Id. art. 38.072, § 2(b); Moore, 233 S.W.3d at 35; Zarco v. State, 210 S.W.3d 816,
833 (Tex. App.—Houston [14th Dist.] 2006, no pet.). However, even if the State
fails to comply with the notice requirements in article 38.072, section 2, we will not
reverse unless the failure caused harm. Zarco, 210 S.W.3d at 832. 
          The notice requirement is intended to prevent surprise at trial due to the outcry
testimony. Id. Thus, in conducting a harm analysis upon a determination of error,
we determine whether the failure caused the appellant to be actually surprised and
whether the failure to meet the requirements prejudiced him. Id. In Zarco, the
Fourteenth Court of Appeals determined that a proceeding begins when the jury is
sworn and empaneled. Id. In that case, the court held that the State’s notice was
insufficient because the appellant received the notice 13 days before the jury was
sworn and empaneled. Id. (holding that providing notice 13 days before jury was
sworn and 14 days before trial court received first evidence did not satisfy
requirements in article 38.072, section 2(b). However, the court held that the error
was harmless and overruled the appellant’s issue on appeal. Id. 
          Here, the State provided notice of its intent to use Bell as an outcry witness on
July 1, 2008. The notice indicated that Bell and Long would be outcry witnesses,
and it provided a summary of their proposed testimony. On July 14, 2008, 13 days
later, rather than 14 as required by article 38.072, the trial court conducted voir dire
and empaneled the jury. See Act of Sept. 1, 1995, 74th Leg., R.S., ch. 76, § 14.25,
1995 Tex. Gen. Laws 835 (amended 2009) (current version at Tex. Code Crim.
Proc. art. 38.072 (Vernon Supp. 2009)). The record does not indicate that the trial
court held a hearing on the outcry testimony. The trial on the merits began on July
15. Appellant’s trial counsel did not object to Bell’s testimony as an improper outcry
witness testimony.
          Because the mandatory provisions of article 38.072 were not followed, the
trial court would have erred in overruling appellant’s objections to lack of notice of
the outcry testimony and failure to hold a hearing on the reliability of the testimony. 
See Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b); Ex Parte White, 160 S.W.3d
at 53; Zarco, 210 S.W.3d at 832. However, to establish ineffective assistance,
appellant had to prove not only that it would have been error to overrule the
objection but also that there was no plausible professional reason for this failure to
object to the admission of Bell’s testimony on this ground and also that the outcome
would have been different had his counsel objected. See Bone, 77 S.W.3d at 836. 
          The record demonstrates that trial counsel may have elected not to object to
the one-day late notice or the failure to hold a hearing on the reliability of Bell’s
testimony because he may reasonably have concluded that any such objection would
be futile in that he could not show surprise or prejudice, nor could he show that
Bell’s testimony was unreliable. Moreover, even if appellant’s counsel had objected
to the admission of Bell’s outcry testimony for failure to comply with article 38.072,
section 2(b)’s notice requirements, appellant has made no showing that he was
actually surprised or prejudiced by the one-day late notification or by the failure to
hold a hearing on the reliability of the testimony, so that the outcome of the
proceeding would have been different but for counsel’s failure to object. Therefore,
we conclude that appellant has not shown that his trial counsel was ineffective in
failing to object to the late notice or to require a hearing on the reliability of Bell’s
testimony as an outcry witness.
D.      Failure to Object to Improper Opinion by Lay Witness on Credibility
          Appellant also argues that his trial counsel was ineffective for failing to object
to improper opinion by a lay witness, namely the complainant’s mother, regarding
the complainant’s credibility. The portion of testimony appellant contends defense
counsel should have objected to is as follows:
[State]:Is there any reason that you wouldn’t believe
your daughter?
 
[Mother]:No, it’s no reason.
[State]:Did you believe that she was telling you the
truth?
 
[Mother]:Yes.
[State]:Do you believe that she was telling you the
truth today?
 
[Mother]:Yes, I do.          Appellant argues that his trial counsel erred in failing to object to the
complaint’s mother’s giving her opinion as to whether her daughter was being truthful
about the allegations that she made against appellant. The State responds that the jury
would expect a mother to so testify, which would make such an objection suspect, and
that appellant’s counsel might reasonably have concluded error in admission of the
testimony would likely have been held to be harmless, so that an objection was not
necessary. See, e.g., Fisher v. State, 121 S.W.3d 38, 41 (Tex. App.—San Antonio
2003, pet. ref’d). 
          Generally, it is improper for a witness to offer direct opinion testimony as to the
veracity of another witness. See Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim. App.
1997); Fisher, 121 S.W.3d at 40. Such testimony is inadmissible “because it does
more than assist the trier of fact to understand the evidence or to determine a fact in 
issue; it decides an issue for the jury.” Fisher, 121 S.W.3d at 41 (internal quotations
removed)(emphasis removed) (quoting Yount v. State, 872 S.W.3d 706, 709 (Tex.
Crim. App. 1993). However, the admission of such testimony from a mother or legal
guardian has been held harmless. See Fisher, 121 S.W.3d at 41 (holding any error in
allowing aunt and legal guardian to testify to complainant’s character for truthfulness
harmless and stating, “A jury would have expected Felicia Fisher, Alice’s aunt and
legal guardian who raised Alice as her own child for six years prior to trial, to testify
that Alice was truthful.”); Matter of G.M.P., 909 S.W.2d 198, 206 (Tex.
App.—Houston [14th Dist.] 1995, no pet.) (“A jury would expect a mother to testify
that her son was truthful, and would likely view such testimony with natural
skepticism.”)
          Here, assuming without deciding that appellant’s trial counsel’s performance
was deficient because of his failure to object to the complainant’s mother’s testimony
regarding the complainant’s truthfulness, appellant has not made an argument showing
that, but for his trial counsel’s unprofessional conduct, the result of the proceeding
would have been different. See Strickland, 466 U.S. at 694, 104 S. Ct. at 268. The
most appellant’s brief argues is that “it would also seem that a juror may well impute
more intuitiveness to a close relative on an opinion like this, certainly more than they
might to a stranger testifying as to whether he believed the complainant was telling the
truth.” Therefore, we conclude that appellant has not shown that his trial counsel’s
performance was deficient because of his failure to object to the statement as to the
complainant’s truthfulness made by the complainant’s mother.
          We overrule appellant’s sole issue.
 CONCLUSION
          We affirm the judgment of the trial court.
 
 
 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Sharp, and Massengale.
 
Do not publish. Tex. R. App. P. 47.2(b).