ACCEPTED
13-15-00166-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/17/2015 4:30:41 PM
CECILE FOY GSANGER
CLERK

**Cause No. 13-15-00166-CR**

IN THE COURT OF APPEALS
FOR THE THIRTEENTH SUPREME JUDICIAL DISTRICT
AT CORPUS CHRISTI-EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/17/2015 4:30:41 PM
CECILE FOY GSANGER
Clerk

-----------------------------------------------------------------------------------------

**JORGE LUIS GONZALEZ, APPELLANT**

**v.**

**THE STATE OF TEXAS, APPELLEE**

-----------------------------------------------------------------------------------------

APPEAL OF TRIAL COURT CAUSE NO. CR-3747-14-H
FROM THE 389TH DISTRICT COURT
HIDALGO COUNTY, TEXAS
The Honorable Leticia Lopez, Presiding

-----------------------------------------------------------------------------------------

**BRIEF OF THE STATE OF TEXAS/APPELLEE**

-----------------------------------------------------------------------------------------

Ricardo Rodriguez, Jr.
Criminal District Attorney
Hidalgo County, Texas

Glenn W. Devino
State Bar No. 24012525
Lead Counsel for Appellee

Office of the Criminal District Attorney
100 N. Closner Blvd.
Edinburg TX 78539
Telephone 956-318-2300 ext. 808
Facsimile 956-380-0407
glenn.devino@da.co.hidalgo.tx.us

FOR THE STATE OF TEXAS, APPELLEE

# IDENTIFICATION OF PARTIES AND COUNSEL

Appellee certifies that the following is a complete list of the parties, attorneys, and all other interested persons regarding this matter:

**1.) The Appellant is:**
Jorge Luis Gonzalez

**2.) Appellant was represented in the trial court by:**
Eloy I. Hernandez, Esq.[1]          2724 W., Canton Rd., Edinburg TX 78539
Adolfo 'Al' Alvarez, Esq.          4409 N. McColl Rd., McAllen TX 78504

**3.) Appellant is represented on appeal by:**
Robert D. Puente, Esq.          1315 W. Polk, suite 24, Pharr TX 78577

**4.) The Appellee is:**
The State of Texas
by and through Ricardo Rodriguez, Jr., Hidalgo County Criminal District Attorney

**5.) Appellee was represented in the trial court by:**
Ricardo Rodriguez., Jr., Hidalgo County Criminal District Attorney
100 N. Closner, 3rd floor, Edinburg TX 78539
by his Assistant Criminal District Attorneys Hope Palacios and Veronica Sepulveda

**6.) Appellee is represented on appeal by:**
Ricardo Rodriguez, Jr., Hidalgo County Criminal District Attorney
100 N. Closner, 3rd floor, Edinburg TX 78539
by his Assistant Criminal District Attorney Glenn W. Devino

---

[1] This attorney was granted leave to withdraw by oral order of the trial court; Adolfo 'Al' Alvarez was retained as substitute counsel, and entered appeared with and for Appellant upon the withdrawal of Eloy Hernandez 6RR4-6.

## NOTE AS TO THE FORM OF CITATION

A.) Citation to the Clerk's Record will be to page number, *e.g.* CR47 refers to Page 47 of the Clerk's Record. Citation to the Supplemental Clerk's Record will be to page number, *e.g.* SCR5 refers to Page 5 of the Supplemental Clerk's Record.

B.) Citation to testimony in the Reporter's Record will be to volume and page number, *e.g.* 3RR56 refers to page 56 of volume 3 of the Reporter's Record.

C.) Citations to exhibits will be to volume and, *e.g.* 25RR State's Exhibit 1 refers to State's Exhibit 1 within volume 25 of the Reporter's Record.

# TABLE OF CONTENTS

Title Page………………………………………………………………………...1

Identification of Parties and Counsel…………………………………………….2

Note as to the Form of Citation……………………………..……………...3

Table of Contents…………………………………………………………..4

Index of Authorities…………………………………………………...5

Statement of the Case…………………………………………………7

Issues Presented……………………………………………………....8

Statement of Facts…………………………………………………......9

Summary of Arguments………………………………………….......16

Note as to Oral Argument……………………………………………17

Arguments and Authorities………………………………………..18

Issue One:       The evidence is sufficient to overcome the challenge to denial of

Appellant's motion for directed verdict of acquittal …………………….18

Issue Two:       Appellant is not entitled to reversal based on the lack of an

'extraneous offense' instruction in the sentencing jury charge..................21

Issue Three:       Trial counsel was not ineffective in electing to raise no

objection to sentencing testimony as to Appellant's immigration status..…….26

Conclusion……………………………………………………………...32

Prayer…………………………………………………………………...32

Certificate of Compliance……………………………………………….32

Certificate of Service………………………………………………...33

# INDEX OF AUTHORITIES

**Cases**

Andrews v. State, 159 S.W.3d 98 (Tex. Crim. App. 2005)…………………………31

Atkinson v. State, 404 S.W.3d 567 (Tex. App.—Houston [1st Dist.] 2010, *pet. ref'd*)……………………………………………………………..….24

Black v. State, 411 S.W.3d 25 (Tex. App.—Houston [14th Dist.] 2013, *no pet.*)..20

Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App. 2010)………………………..18

Camacho v. State, 864 S.W.2d 524 (Tex. Crim. App. 1993, *cert. denied*)……….23

Devoe v. State, 354 S.W.3d 457 (Tex. Crim. App. 2011)………………………...23

Evans v. State, 202 S.W.3d 158 (Tex. Crim. App. 2006)………………………...20

Ex parte Chandler, 182 S.W.3d 350 (Tex. Crim. App. 2005)……………………..30

Ferguson v. State, 313 S.W.3d 419 (Tex. App.—Houston [1st Dist.] 2009, *no pet.*)……………………………………………………………….20

Garza v. State, 2 S.W.3d 331 (Tex. App.—Fort Worth 1999, *pet. ref'd*)………...24

Glockzin v. State, 220 S.W.3d 140 (Tex. App.—Waco 2007, *pet. ref'd*)………...24

Goodspeed v. State, 187 S.W.3d 390 (Tex. Crim. App. 2005)…………………...31

Hernandez v. State, 538 S.W.2d 127 (Tex. Crim. App. 1976)……………………20

Huizar v. State, 12 S.W.3d 479 (Tex. Crim. App. 2000)………………………....22

Huizar v. State, 966 S.W.2d 702 (Tex. App.—San Antonio 1998, *reversed* Huizar v. State, 12 S.W.3d 479 (Tex. Crim. App. 2000))………………………..22

Infante v. State, 25 S.W.3d 725 (Tex. App.—Houston [1st Dist.] 2000, *pet. ref'd*)……………………………………………………………26fn12

Issasi v. State, 330 S.W.3d 633 (Tex. Crim. App. 2010)…………………………18

Jackson v. Virginia, 443 U.S. 307 (U.S. 1979)……………………………………...18

James v. State, 264 S.W.3d 215 (Tex. App.—Houston [1st Dist.] 2008, *pet. ref'd*)………………………………………………………………………...20

Jenkins v. State, 76 S.W.3d 709 (Tex. App.—Corpus Christi 2002, *pet. ref'd*)….19

Lopez v. State, 2014 Tex. App. Lexis 10390 (Tex. App.—San Antonio 2014, *no pet.*)(memorandum opinion—not designated for publication)…………28-30

Ortiz v. State, 93 S.W.3d 79 (Tex. Crim. App. 2002, *cert. denied*)………………30

Prophet v. State, 2010 Tex. App. Lexis 251 (Tex. App.—Houston [1st Dist.] 2010, *no pet.*)(memorandum opinion—not designated for publication)………..20

Strickland v. Washington, 466 U.S. 668 (U.S. 1984)……………………………..27

Thompson v. State, 9 S.W.3d 808 (Tex. Crim. App. 1999)………………………27

Zarco v. State, 210 S.W.3d 816 (Tex. App.—Houston [14th Dist.] 2006, *no pet.*).25

**Statutes**

Tex. Code Crim. P. Art. 37.07…………………………………………………...22, 27

Tex. Pen. Code 1.07…………………………………………………………………21

## STATEMENT OF THE CASE

Appellant was charged by Indictment with the offense of Possession of Controlled Substance (Cocaine), four grams or more but less than 200 grams. CR7. The jury returned a verdict of guilt as to the offense charged; and imposed punishment of nine years' imprisonment and a fine of $9,000.00. 14RR55; 16RR76; CR91; CR104; CR114. The trial court rendered Judgment in accordance with the verdicts of the jury. CR119.

Appellant did not file a motion for new trial. Appellant timely filed notice of appeal. SCR4

## ISSUES PRESENTED

**<u>Issue One:</u>**

The evidence is sufficient to overcome the challenge to denial of Appellant's motion for directed verdict of acquittal.

**<u>Issue Two:</u>**

Appellant is not entitled to reversal based on the lack of an 'extraneous offense' instruction in the sentencing jury charge.

**<u>Issue Three:</u>**

Trial counsel was not ineffective in electing to raise no objection to sentencing testimony as to Appellant's immigration status.

## STATEMENT OF FACTS

A. Discussion and trial-court ruling regarding extraneous matters

Appellant filed a pre-trial Request for notice as to any evidence of extraneous matters which the State might attempt to introduce in trial. CR2. As to this issue, the following exchange among the trial court and counsel for the parties transpired:

> The trial court:     Okay. Do you have a motion *in limine*, Mr. Alvarez?

> Adolfo 'Al' Alvarez (trial counsel for Appellant):   Your Honor, we didn't file any motions but I'd just ask the Court to instruct the prosecutors not to mention anything that was not charged in this particular case unless we first discuss it with the Court to see if it's admissible.

> The trial court:     You're talking about 404(b), extraneous stuff.

> Adolfo Alvarez:   Extraneous, yes, correct.

> …

> The trial court:     I have no problem with your motion *in limine*, oral motion *in limine* concerning 404(b). They are not to discuss anything concerning 404(b) matters until approaching the bench. Now, there is (*sic*) exceptions to those things if it's part of the *res gestae.* So if it's part of the arrest and certain things took place, like say resisting arrest or something like that, they get to talk about that stuff.

> Adolfo Alvarez:   We have no problem with that.

Veronica Sepulveda (prosecuting attorney): And, Judge, I do have some case law regarding the reason – I believe the officers will testify that the reason they went to this house and this vehicle was that they had noticed that it might be a stash house and –

The trial court: If it's part of their investigation, then that's part of their investigation of why they were there and that becomes part of the probable cause and their complaint. So they get to talk about that, too, of what their investigation was all about.

Adolfo Alvarez: I don't have any problem with that, Judge. It gives a context to what was going on.

The trial court: Right. Contextual things are also allowed.

Adolfo Alvarez: Right. So I don't have any problem with that. The fact that they referred to a stash house, I would be objecting to that.

The trial court: I'm not going to tell them how to use their words. I mean, their words are their words and how they're doing an investigation and why they're doing the investigation, that's part of their contextual thing about what a stash house is. I'm going to, you know, that's part of their – of their context of what they're doing, of their investigation. Is that what you're telling me?

Veronica Sepulveda: Yes, Your Honor.

The trial court: I have no problem with that. So that's going to be allowed because that's the reason they were out there, apparently.

13RR10-13

10

B. Adjudicative facts[2]

Officers were dispatched to a particular mobile home "[i]n reference to several undocuments, illegal aliens or whatever you want to call them being held against their will at a stash house."[3] 13RR114-115. Upon arrival, officers activated the 'alley/takedown' lights on their vehicles and "[o]bserved a gray in color Nissan facing the roadway toward us, the driver side was open. Two male persons standing next to the driver side and the third male – the defendant – sitting in the passenger, the right front passenger side." 13RR116; 14RR6-8. As the officer approached, the two men on the driver side fled on foot, running.[4] 13RR118. This officer directed Appellant to remain seated in the automobile. *Id.* Soon thereafter, Appellant "[p]roceeded to open that door and run north of the location…" *Id.* at 119. Appellant complied with the officer's commands to stop. *Id.* Significant amounts of Mexican and United States currency were found in Appellant's pockets. *Id.* at 119-120; 17RR State's Exhibit 12.

As the officer neared the car to ensure it held no other occupants, "I observed in plain view an open, clear corner-cut baggie containing a white powdery substance

---

[2] Physical objects admitted into evidence are not within the bound volumes of the Reporter's Record.

[3] Appellant raised no objection to this testimony.

[4] Another officer apprehended one of these two men who were on the car's driver side. 14RR8.

11

by the shifter, with a set of keys on it, set on the baggie itself."; this package was visible from outside the vehicle. 13RR122-124; 17RR State's Exhibit 4. The officer "[d]iscovered another white clear-cut plastic corner-cut baggie in the dashboard compartments. That baggies was – it was sitting next to a pack of cigarettes. And also, on the right front passenger door handle, there was another clear – corner cut baggie containing a white powdery substance." 13RR122; 17RR State's Exhibits 5-7. The dashboard compartment was essentially a cut-out deck with no door, and was easily accessible and readily visible from the front passenger seat of the vehicle. 13RR124; 17RR State's Exhibit 5. All three of the baggies subject of the instant charge were in plain view and within reach of Appellant. 13RR123-125. The substance in this packaging was determined to be cocaine, in an amount over 4 grams. 15RR10-11. Also found within the vehicle, near the contraband, was currency from Guatemala and from Honduras. 13RR125; 17RR State's Exhibit 8, 12.

No illegal substances were found on Appellant's person, and he did not appear to the testifying officer to be 'high' on any narcotic or alcohol. 13RR136. Appellant denied any knowledge of or connection to the cocaine found in the vehicle, and claimed not to have seen it despite it having been in plain view. 14RR19, 25, 28.

C. Sentencing proceedings

One of the involved officers testified that, in addition to the cocaine and currency discussed in the guilt-innocence portion of Appellant's trial, the officer also discovered on the vehicle's console "[a]n orange in color unlabeled medicine bottle containing two white pills, medicine pills. Also, I discovered on the back right passenger side door, a half-smoked cigarette, marijuana cigarette."[5] 16RR9-10.

As to the residence itself, an officer testified as follows:

> Upon entering the residence, I – to my left from the – through the front door, I observed a homemade shrine with candles lit. I also observed no furniture, only a sofa and, like, I'm not sure how many numbers of five gallon water bottles stacked up right there next to the kitchen area…

> We heard thumping. That's what called us in (to the residence). And of course, we were calling out, 'Donna Police.' We were trying to identify ourselves and make contact with somebody inside the residence because we heard footsteps. That's what made us go inside in the first place. Nobody was answering the door, so we walked in, continued to call out, 'Donna Police, Donna Police.' No answer. We observed – on the west side of the residence, we observed a closed door, a bedroom door. We were knocking on it, no answer. Officer

---

[5] Appellant raised no objection to this testimony, and did not object to admission of the photographs of the items at issue. 16RR11.

13

Trevino went ahead and opened the door and we observed 14 male subjects, later to be determined undocumented immigrants…As I was walking out toward the front door, I observed Sergeant Martinez and Officer Garcia escorting five females from another bedroom on the east side – west side of the residence. They (the women) were wearing only their bra and underwear[6]

16RR11-16

Officers determined that Appellant lacked legal status or authority to be present in the United States, and was subject to an immigration detainer.[7] *Id.* at 16. A probation officer testified as to the consequences of felony conviction vis-à-vis the likelihood of an undocumented alien obtaining permission to take up residence in or remain in the United States; Appellant's mother testified similarly.[8] *Id.* at 21-22, 37. This witness also attested to the difficulty of actually supervising a probationer who has been expelled from this country and forbidden to return. *Id.* at 22-23, 28.

The record is devoid of any request for inclusion in the punishment jury charge an 'extraneous offense' instruction or any objection to the said charge regarding the

---

[6] Appellant raised no objection to this testimony, and objected to the admission of a photograph of this group of men only on grounds that the State had not properly established that each was in fact an undocumented immigrant. 16Rr14; 17RR State's Exhibit 15.

[7] Appellant raised no objections to this testimony.

[8] Appellant raised no objections to this testimony.

14

absence of such an instruction. Appellant, through his trial counsel, affirmatively stated he had no objection to the punishment charge as proposed. 16RR41.

During closing summation, when the prosecutor referred to Appellant apparently having made "[A]nother mistake, having illegals in a trailer," Appellant, through his trial counsel, objected only on grounds that the other acts alleged were 'not proven by the evidence'; the trial court overruled the objection 16RR57.

## SUMMARY OF ARGUMENTS

Appellant's claims of erroneous denial of his motion for directed verdict of acquittal, which claims are legally equivalent to contentions of evidentiary insufficiency, are without merit. The immediate proximity of Appellant to the contraband at issue, its presence in plain view, the discovery on Appellant's person and in his vehicle of substantial amounts of money, and Appellant's flight, is sufficient evidence linking Appellant to the contraband as to sustain conviction.

The trial court did not reversibly err in not incorporating within the sentencing jury charge an 'extraneous offense' instruction. The challenged testimony was 'same transaction contextual evidence' as to which no such instruction was required. Even upon a finding of error, Appellant is not entitled to reversal thereon. Because Appellant neither objected to the lack of such an instruction in the jury charge nor requested its inclusion, entitlement to reversal requires a showing of egregious harm; Appellant cannot meet this burden.

Because evidence as to Appellant's immigration status and likelihood of deportation was relevant to Appellant's suitability for and ability to comply with probation conditions, Appellant's trial counsel was not ineffective for electing to raise no objection to such testimony.

## NOTE AS TO ORAL ARGUMENT

Appellant has requested oral argument. The State of Texas respectfully submits that oral argument in the case at bar would not serve to enlighten the Court further or illuminate the issues in that, because the facts and legal arguments are adequately presented in the briefs and record, the decisional process of the Court would not be significantly aided by oral argument. The State of Texas, therefore, respectfully submits that oral argument in the instant case is not necessary and that the request for oral argument should be denied.

The State of Texas reserves the right to present oral argument should the Court grant the request of Appellant for oral argument.

## ARGUMENTS AND AUTHORITIES

**Issue One:** The evidence is sufficient to overcome the challenge to denial of Appellant's motion for directed verdict of acquittal. [9]

**Argument:**

The Texas Court of Criminal Appeals has recently reiterated the long-standing principle articulated in Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979) that, in considering a sufficiency challenge such as that raised in the instant case, the reviewing court is to view the evidence in a light most favorable to the verdict and uphold the judgment if *any* rational jury could have rendered verdict of guilt. Issasi v. State, 330 S.W.3d 633 (Tex. Crim. App. 2010); Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App. 2010). To show entitlement to reversal of conviction on a claim of insufficiency of the evidence, Appellant must show that *no* rational jury could have found all the elements of the offense beyond a reasonable doubt. Brooks, 323 S.W.3d 893.

---

[9] As a challenge to denial of a motion for directed verdict of acquittal is, in essence, a challenge to evidentiary sufficiency, the State of Texas will herein address Appellant's claims of error in denial of his directed-verdict motion as a claim that the evidence is insufficient to sustain conviction in a single issue. *See*, Zavala v. State, 956 S.W.2d 715 (Tex. App.—Corpus Christi 1997, *no pet.*).

The thrust of Appellant's argument is not that Appellant was not in immediate proximity to the contraband or that the substance was not in fact cocaine, but rather that evidence establishing that Appellant knew of the presence of the contraband is lacking. Appellant was the only occupant of the vehicle; the other two men were outside. Thus, Appellant was in fact in exclusive control of the vehicle in which the contraband was found. Even assuming *arguendo* that Appellant was not in sole control of the automobile, the evidence is nonetheless sufficient.

Of the factors set forth in the opinion of this Court in <u>Jenkins v. State</u>, 76 S.W.3d 709 (Tex. App.—Corpus Christi 2002, *pet. ref'd*) that may establish the required affirmative link between an accused and contraband when control of the location of contraband is not exclusive, several are present in the instant case. All of the baggies were in plain view, with one in front of Appellant in the dashboard deck, one to his left on the console, and one to his right on the passenger door; this was thus not a situation in which, for example, the contraband was in a closed glove compartment the contents of which Appellant may have been unaware. 13RR122-125; 17RR State's Exhibit 4-7. Appellant claimed ownership of the vehicle in question. 14RR18. Appellant was found with a large amount of cash on his person,

19

and additional significant amounts of foreign currency were in the vehicle.[10] 13RR119-120, 125. The contraband was found in close proximity to Appellant. 13RR124-125. Appellant attempted to flee. 13RR119.

It is not the number of links that is dispositive as to evidentiary sufficiency, but rather the logical force of all of the evidence, direct and circumstantial. Evans v. State, 202 S.W.3d 158 (Tex. Crim. App. 2006). Moreover, Texas courts have repeatedly held that the absence of various links is not in itself evidence of innocence to be weighed against evidence connecting the accused to the contraband. *See, e.g.* Hernandez v. State, 538 S.W.2d 127 (Tex. Crim. App. 1976); James v. State, 264 S.W.3d 215 (Tex. App.—Houston [1st Dist.] 2008, *pet. ref'd*); Ferguson v. State, 313 S.W.3d 419 (Tex. App.—Houston [1st Dist.] 2009, *no pet.*); Black v. State, 411 S.W.3d 25 (Tex. App.—Houston [14th Dist.] 2013, *no pet.*).

Appellant he denied connection to the contraband upon inquiry by an investigator. 14RR19, 25, 28. However, the jury, as finder of fact, was free to find this testimony wholly lacking credibility. *See, e.g.* Prophet v. State, 2010 Tex. App. Lexis 251 at 26 (Tex. App.—Houston [1st Dist.] 2010, *no pet.*)(memorandum

---

[10] Found on Appellant's person in United States currency alone, setting aside the foreign money discovered in his personal possession and in the car, was a total of over $7,000.00. 13RR120.

opinion—not designated for publication)("As addressed above, the only evidence that undermines the verdict is appellant's denial that he possessed the cocaine. The jury, however, was free to disbelieve appellant's testimony, and we may not disturb the jury's credibility determination on appeal."). Moreover, Appellant's assertion that the drugs belonged to another in no way undermines the verdict; it was within his physical control, and his knowledge of both its presence and its nature was established by evidence. *See*, Tex. Pen. Code § 1.07(39) ("'Possession' means actual care, custody, control or management.").

**Issue Two:** Appellant is not entitled to reversal based on the lack of an 'extraneous offense' instruction in the sentencing jury charge.

**Argument:**

The evidence Appellant asserts should have been subject of an 'extraneous offense' instruction involved the presence of undocumented aliens at the location of Appellant's arrest and the discovery in the vehicle of pills which may or may not have been contraband. Appellant contends not that such evidence was inadmissible, but rather that the trial court reversibly erred in not *sua sponte* issuing such an instruction even absent any objection to the jury charge or request

21

that the trial court so instruct the jury. *See*, Tex. Code Crim. P. Art. 37.07 sec. 3(a)(1). This position is unsupportable.

The controlling statute provides that:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, and opinion regarding his character, the circumstances of the offense for which he is being tried, and (evidence of extraneous bad acts).
> Tex. Code Crim. P. Art. 37.07 sec. 3(a)(1)

Appellant's reliance on Huizar v. State, 12 S.W.3d 479 (Tex. Crim. App. 2000) for the proposition that it was incumbent on the trial court to instruct the jury that the subject evidence was to be considered only upon a 'beyond a reasonable doubt' finding is misplaced. The opinion of the Court of Appeals in that matter, which was reversed by the Court of Criminal Appeals, sets out that the extraneous conduct at issue was wholly unconnected to the events which led to the conviction subject of the appeal. Huizar v. State, 966 S.W.2d 702 (Tex. App.—San Antonio 1998, *reversed* Huizar v. State, 12 S.W.3d 479 (Tex. Crim. App. 2000)(Appellant convicted of Aggravated Sexual Assault; in sentencing phase of Appellant's trial,

evidence of sexual misconduct unrelated to the case at bar was admitted without issuance of a 'reasonable doubt' instruction). Unlike in Huizar, in the instant case the evidence at issue regarding the presence of illegal immigrants was intertwined with the discovery of the contraband which led to Appellant's arrest, conviction and sentence. It was a report that the residence at the location at issue was in fact a 'stash house' that led to officer's being dispatched to investigate. 13RR114-115. The information conveyed to officers proved accurate, given that more than a dozen undocumented immigrants were found therein. 16RR11-16. Thus, evidence regarding the undocumented immigrants did not relate to conduct 'extraneous' to the offense for which Appellant was charged and convicted; instead, it was the very reason for the officer's presence in the first instance. As the trial court aptly noted in articulating the rationale for its ruling, the 'stash house' report and subsequent discovery of the group was part and parcel of the investigation and thus was 'contextual evidence' regarding an ongoing and indivisible transaction. 13RR10-13; *see*, Devoe v. State, 354 S.W.3d 457 (Tex. Crim. App. 2011). This evidence was not adduced to prove other bad acts alleged to have been committed by Appellant, but rather to explain the circumstances of the officers' presence.

It is beyond dispute such an instruction is generally not required regarding 'same transaction contextual evidence. *See, e.g.*, Camacho v. State, 864 S.W.2d 524 (Tex.

Crim. App. 1993, *cert. denied*). The reasoning of the Fort Worth Court of Appeals, in a case raising this issue, is sound:

> Where the evidence is presented as same transaction contextual evidence, the state is not offering the evidence to prove the defendant's character but simply to explain the surrounding circumstances. Although the jury may use the evidence to assess the defendant's character, by holding that a limiting instruction is not required, the Texas Court of Criminal Appeals has already decided that we should not concern ourselves with that possibility. Therefore, since same transaction contextual evidence is not offered as evidence against a defendant, but simply to explain the circumstances of the offense, a reasonable doubt instruction is not required.
>
> Garza v. State, 2 S.W.3d 331, 335 (Tex. App.—Fort Worth 1999, *pet. ref'd*).

Texas courts considering this issue post-Huizar have followed the reasoning of the Garza court that no such instruction is required in punishment regarding contextual evidence.[11] *See, e.g.* Glockzin v. State, 220 S.W.3d 140 (Tex. App.—Waco 2007, *pet. ref'd*); Atkinson v. State, 404 S.W.3d 567 (Tex. App.—Houston [1st Dist.] 2010, *pet. ref'd*). Assuming *arguendo* that such did constitute an 'extraneous crime or bad act,' there would be no error in denying a request for the instruction or in

---

[11] Appellant seemingly himself conceded this point in trial, raising only a 'failure to prove' objection when the prosecutor made reference in her closing argument to the discovery of undocumented aliens in the mobile home. 16RR57.

overruling an objection to the charge for lack thereof because the testimony at issue was same-transaction contextual evidence.

The State would note that Appellant raised no objection to the sentencing charge as proposed, made no request for inclusion therein of an 'extraneous act' instruction, and moreover affirmatively stated that he had no objection to the proposed jury charge. 16RR41. Concededly, Huizar and its progeny impose a *sua sponte* duty to issue an extraneous-act instruction when entitlement thereto is established regardless of whether the accused objects to its absence or requests its inclusion. "However, the failure to object increases appellant's burden on appeal, imposing a higher hurdle appellant must overcome—namely egregious harm--before we can reverse." Zarco v. State, 210 S.W.3d 816, 821 (Tex. App.—Houston [14th Dist.] 2006, *no pet.*). The instruction would merely have dictated that the jury not consider evidence of extraneous conduct or offenses unless convinced beyond a reasonable doubt that such acts or conduct are attributable to the accused. *See,* Huizar, 12 S.W.3d 479. Assuming *arguendo* that the trial court should have issued such an instruction, its absence did not egregiously harm Appellant.

The term of imprisonment imposed was less than half that available upon conviction. Moreover, if in fact Appellant's conduct as established by evidence

25

regarding the immigrants or the pills did constitute an extraneous crime or bad act, the evidence thereof was overwhelming and a rational jury would in all likelihood have found his culpability therefore beyond a reasonable doubt in any event. *See,* Zarco v. State, 210 S.W.3d 816. As to the marijuana, the same reasoning that a rational jury likely would have concluded beyond any reasonable doubt that Appellant did in fact possess it holds; moreover, the effect of this evidence, if any, on the jury's verdict was certainly *de minimis*. Any harm flowing from any error in the punishment charge was not so egregious as to warrant reversal.

**Issue Three:**     Trial counsel was not ineffective in electing to raise no objection to sentencing testimony as to Appellant's immigration status.

**Argument:**

Appellant's claim of ineffective assistance of counsel rests on Appellant's contention that his trial attorney should have objected to testimony in sentencing proceedings regarding Appellant's immigration status.[12]

---

[12] Appellant's contention that the prosecution elicited testimony as to Appellant's nationality is unsupported in the record; the inquiries were concerning whether Appellant was in the United States legally, not his country of origin. *See,* Infante v. State, 25 S.W.3d 725 (Tex. App.—Houston [1st Dist.] 2000, *pet. ref'd*) in which the Court noted the distinction between a person's status as an illegal alien and his alienage, ruling that status questions are proper whereas national-origin questions are not.

26

To prevail on such a claim, two elements must be established: that counsel's performance did in fact fall below an objective standard of reasonableness, and that a reasonable probability exists that the outcome of the proceeding would have been different but for the errors of counsel. Strickland v. Washington, 466 U.S. 668 (U.S. 1984); Thompson v. State, 9 S.W.3d 808 (Tex. Crim. App. 1999). "Absent *both* showings an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable." Thompson, 9 S.W.3d. at 813 (*emphasis added*).

In light of Appellant's filing of a probation application pursuant to Tex. Code Crim. P. Art. 37.07 sec. 2(b)(1), Appellant put to the finder of fact the question of fact his suitability for placement on community supervision as an alternative to imprisonment upon conviction. CR93. In its sentencing charge, the trial court properly instructed the jury that the determination of whether to recommend community supervision rested solely within the jury's discretion. CR109. Appellant himself questioned his mother extensively about his suitability for probation. 16RR32-36.

Evidence established that Appellant was subject of an immigration detainer and that it would be a near certainty that Appellant would be deported and denied

27

reentry upon conviction of the instant offense. 16RR16, 21-22. The thrust of the probation officer's testimony was not that Appellant should be punished for lacking citizenship or legal residency in this country, but rather that concerned the practical impossibility of supervising Appellant and securing his participation in available rehabilitative programs in the event he were ejected from the United States and barred from returning. CR22-23, 28-29.

As an illustration of a proper analysis of such claims, the San Antonio Court of Appeals stated as follows in a case presenting this issue:

> After Lopez conceded that he was subject to an ICE hold[13], the jury heard testimony from the director of the Guadalupe County Community Supervision and Corrections Department about the effect of an ICE hold on a defendant's ability to complete community supervision. He explained that after a defendant with an ICE hold is released on community supervision, the defendant is then subject to deportation proceedings and the federal government takes custody of him. He testified that a deported defendant cannot successfully complete the terms of his community supervision. He also testified that even if a defendant is not deported, he may have difficulties completing some of the standard terms of community supervision, such as maintaining gainful employment. He also explained the community supervision department is not notified when a defendant

---

[13] A detainer issued by Immigration and Customs Enforcement; Appellant in this instant case was subject of such a detainer. 16RR16.

who was placed on community supervision is later released from federal custody without deportation. It is therefore a defendant's responsibility to report for community supervision after his release…

Lopez applied for community supervision and he testified on direct examination that he would fulfill all of the requirements of community supervision. Lopez therefore made his ability to complete the terms of community supervision an issue during the punishment phase. The community supervision director's testimony, which Lopez did not object to, shows why Lopez's ICE hold was relevant to his ability to complete community supervision. For instance, if Lopez had been placed on community supervision but was subsequently deported in federal immigration proceedings, he would essentially have avoided any punishment imposed by the State of Texas for his crimes. The ICE hold was also relevant because the hold and related immigration proceedings could have impeded Lopez's ability to complete standard terms of community supervision. The jury could also consider the possibility that Lopez, if he were released by ICE without being deported, would choose not to report to the community supervision department.

We hold the trial court did not abuse its discretion by admitting testimony of Lopez's ICE hold and its effect into evidence during the punishment phase because it was relevant for the jury to determine Lopez's suitability for community supervision and tailor an appropriate sentence. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (holding trial court's rulings on the admission

of evidence are reviewed abuse of discretion). We overrule Lopez's sole issue and affirm the trial court's judgments.

Lopez v. State, 2014 Tex. App. Lexis 10390 at 3-4 (Tex. App.—San Antonio 2014, *no pet.*)(memorandum opinion—not designated for publication).

It may well be that Appellant's trial attorney, presumably versed in evidentiary rules, recognized that any objection to the testimony of the probation officer would have been overruled and thus so objecting would have been futile. Trial counsel is not ineffective for failing to perform a useless or futile act. *See, e.g.* Ex parte Chandler, 182 S.W.3d 350 (Tex. Crim. App. 2005). Furthermore, to prevail on an ineffectiveness claim on a failure of counsel to object to certain evidence, it must be shown that the evidence was in fact inadmissible. *See*, Ortiz v. State, 93 S.W.3d 79 (Tex. Crim. App. 2002, *cert. denied*). In this case, Appellant does not and cannot make that showing.

Appellant did not avail himself of the opportunity to develop a record, by way of a new-trial proceeding, as to the reasoning and strategy of his trial counsel in this regard. Especially when, as here, there is nothing in the record as to the reasoning behind counsel's decisions, reviewing courts are to indulge a strong presumption that the decisions of trial counsel were the product of sound reasoning. Ortiz v.

State, 93 S.W.3d at 88-89 (Tex. Crim. App. 2002, *cert. denied*)("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."). As the Court of Criminal Appeals noted it its opinion in Thompson v. State, 9 S.W.3d 808, direct appeal is generally not an ideal vehicle for prosecuting an ineffectiveness claim as no record is developed as to the reasons or explanations for the decisions made. Moreover, counsel should generally be granted an opportunity to explain the reasoning behind a particular decision before being denounced as ineffective. Goodspeed v. State, 187 S.W.3d 390 (Tex. Crim. App. 2005). As the Goodspeed court stated, absent such an opportunity, a reviewing court should not determine that counsel was ineffective unless his conduct was so outrageous that no competent attorney would have made such a decision, taken such an action, or committed such an omission. *Id*; *see, also,* Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005)("We have said that we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only of the conduct was so outrageous that no competent attorney would have engaged in it.").

## CONCLUSION

Appellee respectfully submits, for the reasons set forth herein, that the Judgment of

the trial court should in all respects be affirmed.

## PRAYER

Wherefore, premises considered, the State of Texas prays the Court affirm the

Judgment of the trial court.

Respectfully submitted,

\_\_\_/s/ Glenn W. Devino\_\_\_\_
Glenn W. Devino
Assistant Criminal District Attorney
100 N. Closner, 4th floor
Edinburg TX 78539
Telephone 956-318-2300
Facsimile 956-380-0407
State bar no. 24012525
glenn.devino@da.co.hidalgo.tx.us

**Certificate of Compliance**
I hereby certify that this computer-generated document has the following number
of words:           6,154 words

\_\_\_/s/ Glenn W. Devino\_\_\_\_
Glenn W. Devino
Assistant Criminal District Attorney
100 N. Closner, 4th floor
Edinburg TX 78539
Telephone 956-318-2300
Facsimile 956-380-0407
State bar no. 24012525
glenn.devino@da.co.hidalgo.tx.us

**Certificate of Service**

I hereby certify that I have sent a true and correct copy of the foregoing Brief of Appellee to Appellant, Jorge Luis Gonzalez, which Brief is electronically filed, by serving Appellant therewith through the electronic filing manager to his attorney, Robert D. Puente, on this the 17th day of August, 2015.

_____/s/_____Glenn W. Devino
Glenn W. Devino
Assistant Criminal District Attorney
100 N. Closner, 4th floor
Edinburg TX 78539
Telephone 956-318-2300
Facsimile 956-380-0407
glenn.devino@da.co.hidalgo.tx.us
State bar no. 24012525